UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Jamie Davis,<br><br>      Plaintiff,<br> v.<br><br>Diversified Consultants, Inc.; and<br>DOES 1-10, inclusive,<br><br>      Defendants. | Civil Action No.: 1:13-cv-10875-FDS |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR STAY OF SUMMARY JUDGMENT AND TRIAL DATES

NOW COMES Plaintiff Jamie Davis ("Davis"), by and through his undersigned counsel, and files his response in opposition to Defendant Diversified Consultants, Inc.'s ("DCI"), Motion for Stay of Summary Judgment and Trial dates. In its motion DCI maintains that this Court is unable to apply law to the facts because the law is vague and clarification from the Federal Communication Commission is necessary before the case moves forward. The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, as well as the relevant regulations are clear and this Court is fully capable of assessing the claims. Further, the discovery in this case has been completed and the claims are ripe for review. Furthermore, LiveVox, the telephone system employed by DCI to place telephone calls to the Plaintiff, has been ruled – as a matter of law – to be an automatic telephone dialing system within the meaning of 47 U.S.C. § 227(a)(1). *Echevvaria v. Diversified Consultants, Inc.*, 2014 WL 929275 *7 (S.D.N.Y. Feb. 28, 2014).

## BACKGROUND

Jamie Davis, who does not owe DCI a dime, has sued DCI under the TCPA, because DCI called his cellular phone repeatedly through its automated telephone dialing system without his

consent. Following the filing of the Complaint on April 12, 2013, the parties have engaged in discovery, which is set to close on March 19, 2014. In addition to gathering evidence by means of the interrogatories and requests for production of documents, Plaintiff took a Fed. R. Civ. Pr. 30(b)(6) deposition of DCI in Florida. DCI has deposed the Plaintiff. The Plaintiff has discovered his case and is now ready to move for summary judgment.

## ARGUMENT

Plaintiff alleges that DCI employs an automated telephone dialing system ("ATDS") which meets the definition set forth in 47 U.S.C. § 227(a)(1) and that DCI repeatedly robodialed him on his cellular telephone using an ATDS. (*See* Docket No. 1, Complaint at ¶¶ 15 and 24-27). DCI, a debt collector, attacks these allegations by claiming that "its dialing system is not an ATDS" and relies on a footnote in the U.S. District Court for the Eastern District of Missouri order denying a class certification motion. *O'Connor v. Diversified Consultants, Inc.*, 4:1-CV-01722-RWS (E.D. Mo. May 28, 2013) (*See* Lemberg Decl., Exhibit A). However, the *O'Connor* court, finding for DCI on grounds completely irrelevant to issues in this case, made no finding on the issue whether DCI's phone system is or is not an ATDS, but merely acknowledged, without discussion, that DCI submitted "compelling evidence" that it does not use ATDS. This was not surprising, because the plaintiff adduced no evidence at all.

Just recently, however, on February 28, 2014, the U.S. District Court for the Southern District of New York unequivocally ruled that DCI's LiveVox system "is a predictive dialer [and] under the FCC's rules interpreting the TCPA, is an ATDS covered by the TCPA." *Echevvaria v. Diversified Consultants, Inc.*, 2014 WL 929275 *7 (S.D.N.Y. Feb. 28, 2014). Just like in this case, DCI in *Echevvaria* claimed that its LiveVox system was not ATDS. After carefully reviewing the evidence before it, *Echevvaria* court rejected DCI's arguments:

> Sullivan's [witness of DCI] description comports with the definition of a predictive dialer promulgated by the FCC. The LiveVox system "dial[s] numbers" and "assists telemarketers in predicting when a sales agent will be available to take calls." (*Compare* Sullivan Dep. at 32–35, *with 2003 Report*, 18 F.C.C. Rcd. 14014, 14091 ¶ 131, 2003 WL 21517853 (F.C.C. July 3, 2003).) Moreover, LiveVox dials numbers drawn "from a database of numbers." (*Compare* Sullivan Dep. at 22, *with 2003 Report* at 14091 ¶ 131.) LiveVox places the calls "without human intervention." (*Compare* Sullivan Dep. at 30, *with 2003 Report* at 14092 ¶ 132.) It is undisputed that Diversified uploads in excess of three million phone numbers every morning and those numbers remain in the system, where they are dialed automatically by LiveVox pursuant to that day's strategy, until midnight, when they are erased. (*See* page 3 above.) Indeed, Diversified's Jamie Sullivan explicitly admitted that LiveVox is a "predictive dialer." (Sullivan Dep. at 32–33, 38, 78.) Accordingly, because LiveVox is a predictive dialer, it constitutes an ATDS.
>
> *Id*. at *6.

The *Echevvaria* court ruling that DCI's predictive dialer falls within FCC's definition of ATDS relied on similar findings by other courts. *See Meyer v. Portfolio Recovery Assocs. LLC*, 707 F.3d 1036, 1043 (9th Cir.2012) (Defendant's "predictive dialers fall squarely within the FCC's definition of 'automatic telephone dialing system.' "), *cert. denied*, ––– U.S. –––, 133 S.Ct. 2361, 185 L.Ed.2d 1068 (2013); *Swope v. Credit Mgmt., LP*, No. 12CV832, 2013 WL 607830 at *4 (E.D.Mo. Feb. 19, 2013) (The FCC has twice "held that predictive dialers are considered automatic telephone dialing systems subject to the TCPA, and that debt collectors are not exempt from the statute's prohibitions."); *Vance v. Bureau of Collection Recovery LLC*, No. 10–cv–06324, 2011 WL 881550 at *2 (N.D.Ill. Mar.11, 2011) ("[T]he Court notes that the FCC has indicated, and other courts have held, that predictive dialing systems do meet the definition of devices prohibited by the TCPA.").

Since the First Circuit has not squarely addressed whether a predictive dialer is an ATDS, at least one court in this district turned to the Ninth Circuit to examine treatment of such claims.

*Jones v. FMA Alliance Ltd.*, 2013 WL 5719515 n. 10 (D. Mass. Oct. 17, 2013). The Ninth Circuit has recently noted, in interpreting the TCPA, that "[t]he FCC further defined 'automatic telephone dialing system' to include predictive dialers." *Meyer v. Portfolio Recovery Associates, LLC*, 11-56600, 2012 WL 6720599 at *4 (9th Cir. Dec. 28, 2012) citing In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14091-93 (July 3, 2003) (the "2003 FCC Order," a copy of which is annexed to Lemberg Decl., Exhibit E). The Ninth Circuit holds that federal courts cannot dispute such rulings by the FCC. *See Pacific Bell Telephone Co. v. California Public Utilities Com'n*, 621 F.3d 836, 843 n. 10 (9th Cir. 2010) ("Under the Hobbs Act, this court lacks jurisdiction to rule on a collateral attack of an FCC order."); *Leckler v. Cashcall, Inc.*, 2008 WL 5000528, *2 (this "declaratory ruling is a 'final order' for the purpose of the Hobbs Act").

The *Meyer* court included the following excerpt from the 2003 FCC Order to further explain the FCC's finding:

> [A] predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." As one commenter points out, the evolution of the teleservices industry has progressed to the point where using lists of numbers is far more cost effective. The basic function of such equipment, however, has not changed—the capacity to dial numbers without human intervention.

*Meyer*, 2012 WL 6720599 at *4 *citing* 2003 FCC Order, 14091-92.[1]

But there is even more evidence in this case. Just like in *Echevvaria*, there is no issue of

---

[1] In a 2008 declaratory ruling, the FCC "affirm[ed] that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers." *2008 FCC Declaratory Ruling, supra*, at 566, par. 12. The petitioner there argued that "a predictive dialer meets the definition of autodialer only when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists." Id. The FCC rejected this interpretation, citing the considerations that guided its 2003 FCC Order. Id. at 566–67, par. 13-14. (*See* Lemberg Decl., Exhibit F).

fact that DCI's phone system complained of in this action is ATDS.  First, DCI advertized prominently on its website that it uses "LiveVox," which is a "leading provider of predictive dialing solutions to the collection industry," and refers elsewhere to its system as a "state of the art predictive dialer." (*See* Lemberg Decl., Exhibit B).  Secondly, the operation manual of LiveVox, the telephone dialing system used by DCI, describes in detail that such system is fully capable to store and produce telephone numbers to be called, using a random or sequential number generator, and dials such numbers. (*See* Lemberg Decl., Exhibit C).  Indeed, the LiveVox manual includes specific instructions how to accomplish such tasks.  For example, it instructs how to upload a file containing telephone numbers so that such numbers could be dialed:

> **UPLOADING A CAMPAIGN**
>
> This section describes how to upload a file containing phone numbers and customer information for use on the LiveVox system. Uploading a file will load a file onto a LiveVox. A file is not ready after it is uploaded – it must then be built in order to be ready to dial.

(*See* Lemberg Decl., Exhibit C, p. PA32).  The LiveVox manual also states that the LiveVox system has the capacity to archive such uploaded files.

> **Archive** - subcategory – files older than the current date are archived; these files will only be displayed until their shelf life expires.

(*See* Lemberg Decl., Exhibit C, p. PA32).  The LiveVox manual further instructs that the system has capacity to check the uploaded file against other files that are residing on the system, or, in other words, are stored in the system:

> **DUPLICATE FILE CHECK**
>
> Files loaded are checked against files already loaded to check if the name or content of any campaign files are duplicated.

(*See* Lemberg Decl., Exhibit C, p. PA35).  Further, the LiveVox manual states that unless a

5

specific dialing strategy is selected, by default, LiveVox dials the uploaded numbers sequentially:

> By default, the Dialing Strategy selected for Campaigns is "Standard" and is defined as dialing sequentially each phone (Phone 1, Phone 2, Phone 3, and so on) that is contained in the input file provided by the client.

(*See* Lemberg Decl., Exhibit C, p. PA64).

Third, Ms. Mavis-Ann Kohn-Pye ("Pye"), a witness produced by DCI in response to Plaintiff's Fed. R. Civ. P. 30(b)(6) notice of deposition, confessed that DCI uses ATDS. Specifically, Ms. Pye admitted that:

- DCI uses a "predictive dialer" named 'LiveVox' to make outbound phone calls (Pye Depo Tr.[2] 21:12-15, 22:5-6, 105:8-10, 108:5-16);
- DCI's predictive dialer has ability to store numbers (Pye Depo Tr. 80:11-13, 81:24-82:2);
- DCI's predictive dialer has the capacity to dial telephone numbers sequentially (Pye Depo Tr. 89:17-21, 92:14-17).

As defined in the TCPA, an "automatic telephone dialing system" means "equipment that has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).  LiveVox, DCI's telephone calling system, fits squarely within this definition of a predictive dialer as it utilizes a list of phone numbers and dials them without human intervention and is programmed to determine what actions to take once a live connection is established.  For these reasons, as a matter of law, DCI utilized an ATDS to call the Plaintiff.

Finally, DCI failed to articulate why this Court must follow *Hurrle v. Real Time Resolutions, Inc.*, 2014 W.L. 670639 (W.D. Wash. 2014) in staying the proceedings.  Short of

---

[2] Deposition Transcript of Mavis-Ann Kohn-Pye is attached to Lemberg Declaration as Exhibit D.

stating generally that *Hurrle* involves a TCPA claim as well, DCI presents no argument why *Hurrle*, or the FCC's petition *In Re Communications Innovators* mentioned but not discussed by *Hurrle*, binds this Court to abstain from further proceedings. As such, DCI's motion for stay of proceedings must be denied.

In any event, to the extent DCI is alleging that collection calls to cellular phones are not covered by the TCPA, that argument has been rejected by the vast majority of courts that addressed it. *See Reid v. I.C. System, Inc.*, 2:12-CV-02661-ROS, Doc. No. 18[3] (D. Ariz., Sept. 3, 2013); *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013) ("The TCPA is a remedial statute that was passed to protect consumers from unwanted automated telephone calls."); *Iniguez v. The CBE Grp.*, 2013 WL 4780785 *4 (E.D. Cal. Sept. 5, 2013), reconsideration denied (Dec. 5, 2013) (FCC is permitted to make exceptions for certain calls to residential lines that do not contain an unsolicited advertisement and will not adversely affect privacy rights. The statute does not permit the FCC to make similar exceptions for calls made to wireless numbers.); *Moltz v. Firstsource Advantage, LLC*, 2011 WL 3360010 *5 (W.D.N.Y. Aug. 3, 2011) (FCC, the agency responsible for enforcing the TCPA, determined that autodialed and prerecorded message calls to wireless numbers made in connection with an existing debt are permissible, as long as made with the "prior express consent" of the called party).

Dated: March 17, 2014

                                            Respectfully submitted,

                                            By   */s/ Sergei Lemberg*
                                            Sergei Lemberg (BBO# 650671)
                                            LEMBERG & ASSOCIATES L.L.C.
                                            1100 Summer Street, 3rd Floor
                                            Stamford, CT 06905
                                            Telephone: (203) 653-2250
                                            Facsimile:  (203) 653-3424
                                            Attorneys for Plaintiff

---

[3] A copy of the order is attached to Lemberg Declaration as Exhibit G.

**CERTIFICATE OF SERVICE**

      I hereby certify that on March 17, 2014, I electronically filed the foregoing Response in Opposition to Defendant Diversified Consultants, Inc., Motion for Stay of Summary Judgment and Trial Dates using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

John J. O'Connor
PEABODY & ARNOLD LLP
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210
*Attorney for Defendant*

                                                    /s/ Sergei Lemberg
                                                    Sergei Lemberg
                                                    Attorney for Plaintiff