# EXHIBIT A

**JOHNNY O'CONNOR, Plaintiff,**

**v.**

**DIVERSIFIED CONSULTANTS, INC., Defendant.**

Case No. 4:11CV1722 RWS.

**United States District Court, E.D. Missouri, Eastern Division.**

May 28, 2013.

# MEMORANDUM AND ORDER

RODNEY W. SIPPEL, District Judge.

Plaintiff Johnny O'Connor brought suit against Defendant Diversified Consultants, Inc. on his own behalf and on behalf of other similarly situated individuals. The basis of this action is Diversified's alleged violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, et seq. and the Telephone Consumer Protection Act of 1991 (TCPA), 47 U.S.C. § 227, et seq. A class certification hearing was held in this matter and the parties filed supplemental briefs after the hearing. Because I find that there are unique evidentiary issues that will need to be resolved on an individual case basis, I will deny O'Connor's motion to certify a class.

## *Background*

Plaintiff O'Connor's complaint claims that Diversified violated the FDCPA and the TCPA when its representatives called O'Connor several times on his cell phone in an attempt to collect a debt O'Connor owed to U.S. Cellular. O'Connor asserts that Diversified acquired the debt for collection on July 23, 2011.[1] He alleges that Diversified representatives called him two times on July 25, 2011. In the first call the representative allegedly yelled at O'Connor, demanded payment of the debt, and refused to send "anything" regarding the debt in writing. A second representative allegedly called later that day and demanded immediate payment of the debt but did agree to send paperwork. On July 26, 2011, another Diversified representative called O'Connor and allegedly demanded immediate payment of the debt and told O'Connor he had no right to dispute the debt. O'Connor alleges that he received another call from Diversified on July 27, 2013 in which the representative allegedly yelled at him and refused to send "anything in writing whatsoever."

O'Connor alleges that during these calls Diversified's representatives "never told Plaintiff that the payment demand was subject to Plaintiff's rights to dispute the debt, request validation, or to receive verification of the debt." (Doc. # 42, Pl.'s Second Amend Compl. at ¶ 43) O'Connor asserts that Diversified's demands for immediate payment within the thirty day dispute period provided for by § 1692g "overshadowed" his "dispute/verification/validation rights" thereby violating the FDCPA.

O'Connor's claim under the TCPA is based on Diversified's alleged use of an automatic telephone dialing system to place calls to O'Connor's cell phone without his permission.

In his second amended complaint, O'Connor seeks to establish two classes. One asserting a claim under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, et seq. and a second class asserting a claim under the Telephone Consumer Protection Act of 1991 (TCPA), 47 U.S.C. § 227, et seq.[2] A class certification was held in which O'Connor presented his argument in support of the certification of these two classes. Diversified argued that class certification is unwarranted because of the need to conduct individual discovery in each plaintiff's case.

## Legal Standard

A class action may be brought only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. of Civ. P. 23. "[C]ertification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011). "Frequently that rigorous analysis will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped. The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Id. (internal quotations and citations omitted). If a plaintiff establishes these prerequisites, a class action must also qualify under one of the three subdivisions of Rule 23(b).

O'Connor seeks to certify his classes under Rule 23(b)(3). That section provides for class certification if I find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

> The requirement of Rule 23(b)(3) that common questions predominate over individual questions tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. The nature of the evidence that will suffice to resolve a question determines whether the question is common or individual. If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question.

Blades v. Monsanto Co., 400 F.3d 562, 566 (8th Cir. 2005)(internal quotations and citation omitted). "In making its determination, the district court must undertake a rigorous analysis that includes examination of what the parties would be required to prove at trial." Avritt v. Reliastar Life Ins. Co., 615 F.3d 1023, 1029 (8th Cir. 2010)(internal quotation omitted).

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Wal-Mart Stores, Inc., 131 S. Ct. at 2550. (internal quotation and citation omitted). The "plaintiff has the burden of showing that the class should be certified and that the requirements of Rule 23 are met." Coleman v. Watt, 40 F.3d 255, 258-259 (8th Cir. 1994).

## Analysis

In his motion and memorandum in support of class certification, O'Connor asserts that Diversified has been retained by U.S. Cellular to collect debt on at least 25,000 U.S. Cellular accounts. O'Connor seeks to certify two classes, one under the FDCPA and the other under the TCPA, limiting the classes to the collection of these U.S. Cellular debts.[3]

## FDCPA Class

The FDCPA is a consumer protection statute that prohibits certain abusive, deceptive, and unfair debt collection practices. See 15 U.S.C. § 1692

O'Connor defines this proposed class as:

> All residents of the United States who, within one year prior to the filing of this Complaint, (1) received a telephone call from Defendant regarding a U.S. Cellular consumer debt (2) where such a call occurred within thirty days of the Defendant's acquisition of that debt from U.S. Cellular (3) where Defendant made

a payment demand without explaining that the demand was subject to the consumer's right to dispute the debt, to request validation of the debt.

(Doc. # 45, Pl's Mem. in Support of Class Cert. at 7)

Assuming, without deciding, that O'Connor has established the prerequisites of Rule 23(a), he must also establish that his proposed classes qualify under one of the three subdivisions of Rule 23(b).

O'Connor seeks to certify his classes under Rule 23(b)(3). That section requires O'Connor to establish that questions of law or fact common to class members predominate over any questions affecting only individual members. If "the members of a proposed class will need to present evidence that varies from member to member, then" the claims are not appropriate for a class action. Blades, 400 F.3d at 566.

The FDCPA requires collectors give debtors a written "validation notice" of their rights within 5 days of the initial communication with the debtor. If debtors make a written request within 30 days of receiving the validation notice, the debt collection must cease collection efforts until the debt collector places verification information in the mail to the debtor. 15 U.S.C. § 1692g. "[T]he validation period is not a grace period; in the absence of a dispute notice, the debt collector is allowed to demand immediate payment and to continue collection activity." Ellis v. Solomon and Solomon, P.C., 591 F.3d 130, 135 (2nd Cir. 2010)(internal quotation and citation omitted). However "[a]ny collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt..." § 1692g(b).

O'Connor's proposed class is for debtors who were contacted within thirty days of Diversified's acquisition of the debt where a demand for an immediate payment of the debt was made without informing the debtor of his right to dispute the debt. O'Connor's proposed class convolutes the notice requirements of the FDCPA. Nothing in the Act prevents a debt collector from calling a debtor within thirty days of the collector's acquisition of the debt.[4] Nor is a debt collector barred from calling a debtor, letting him know his debt has been assigned for collection, and requesting that the debtor pay the debt. The Act does not require the collector in its initial contact with the debtor to notify him of his right to dispute the debt. The Act requires a debt collector to send a notice of rights to the debtor within five days of the initial contact. See § 1692g. In its opposition brief and at the class certification hearing Diversified represented that it complied with the written notice requirement in O'Connor's case and provided the required written notice as the normal course of business in all of it collections efforts for U.S. Cellular.

However, a debt collector cannot use collection tactics that lead a debtor to believe he does not have any right to challenge the debt. Such a course of action has been labeled "overshadowing" in the FDCPA. § 1692g(b). O'Connor's proposed class is for debtors who were subjected to phone calls by Diversified which amounted to overshadowing. The inquiry of which debtors were subjected to such alleged tactics is an individual inquiry. This is not a case where each debtor was sent the same written communication which violated the FDCPA. To determine whether Diversified's phone calls to each plaintiff establishes an overshadowing claim will demand an individual inquiry into the communications made to each plaintiff. As a result, a certification of a class action claim under the FDCPA is not appropriate.

## TCPA Class

The TCPA was enacted by Congress in response to a growing number of consumer complaints regarding intrusive nuisance telemarketing practices. Mims v. Arrow Financial Services, LLC, 132 S. Ct. 740, 744 (2012). The TCPA, as it relates to the present lawsuit, prohibits making a call to a cellular telephone using an automatic telephone dialing system (ATDS) without the prior express consent of the called party. 47 U.S.C. § 227(b).

O'Connor defines this proposed class as:

All resident s of the United States who received on their cellular phone, within one year prior to the date of the Complaint: (i) Any telephone call from Defendant pertaining to a U.S. Cellular bill; (ii) Where

defendant used its ATDS, and (iii) Where the call was placed in a non-emergency situation, and (iv) Where the consumer failed to provide prior express consent to Defendant to be contacted on his or her cellular telephone with an ATDS.[5]

(Doc. # 45, Pl's Mem. in Support of Class Cert. at 11)

Stated more simply, the proposed TCPA class is for any debtor of U.S. Cellular who was called on their cell phone by Diversified using an ATDS without the debtor's consent.[6] Whether the debtor's consented to be called on their cell phone is a pivotal issue in determining whether to certify this class. The debt forming the basis of this class is for cellular service provided by U.S. Cellular. The evidence at the class certification hearing is that Diversified obtained the proposed class cell phone numbers from U.S. Cellular. These cell phone numbers were either assigned to the to the debtors by U.S. Cellular when they obtained cellular service or they were cell phone numbers provided by the debtor to U.S. Cellular during the application process. (O'Connor's counsel stated at the class certification hearing that he did not know how U.S. Cellular obtained the cell number on which Diversified called O'Connor.)

The Federal Communications Commission has issued two relevant orders regarding consent to call a cell phone. On October 16, 1992, the FCC issued an order which stated that cellular carriers do not need consent from "their cellular subscribers prior to initiating autodialer... calls for which the cellular subscriber is not charged." In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 7 FCC Rcd. 8752, 8775. On January 4, 2008, the FCC issued an order stating that if a party provides a cell phone number to a creditor, for example, as part of a credit application, they are deemed to have provided express consent to be autodialed by the creditor at that cell phone number. In the matter of Rules and Regulations Implementing the Telephone Consumer Protection Ast of 1991, 23 F.C.C.R. 559, 564.[7] The FFC order also states that calls "placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call." Id. at 565.

The FCC has established that cellular carriers need not get permission to autodial their subscribers where no charge is incurred and that calls by a debt collector are treated as if the creditor itself placed the call. Diversified argues that in collecting the debt from these cellular customers, it stands in the shoes of U.S. Cellular and is entitled to the shelter that the FCC has provided to cellular companies. I agree with Diversified's position. I find that a debt collector for a cellular company may invoke the shelter given to the cellular company for calls to its subscribers. Because the shelter only applies where the cellular subscriber has not incurred a charge for the call, an individual inquiry will be necessary to determine if a charge was incurred. Such an individual inquiry makes the certification of a TCPA class inappropriate.

Alternatively, if a debtor provided a cell number to U.S. Cellular to contact (separate from the one issued by U.S. Cellular) then they consented to be called on that number.[8] As noted earlier, when asked at the certification hearing, O'Connor's counsel did not know if the cell number Diversified used to contact O'Connor was assigned to him by U.S. Cellular. An individual case by case inquiry will be necessary to determine whether the debtors in the proposed class consented to be contacted on their cell phones regarding their debt to U.S. Cellular by providing their cell number to U.S. Cellular. Discovery into the debtor's agreements with U.S. Cellular will involve an individual inquiry into each plaintiff's agreement. Such an individualized inquiry weighs against class certification. See Versteeg v. Bennett, Deloney, & Noyes, P.C., 271 F.R.D. 668, 674 (D. Wyo. 2011)(discovery issue of whether individual proposed class members provided their cell number to creditors which were called by a debt collector precluded the certification of a class for a TCPA claim); Forman v. Data Transfer, Inc., 164 F.R.D. 400, 404 (E.D. Pa. 1995)(denial of class certification where an individual inquiry would be undertaken regarding a consent to receive facsimiles). As a result, a certification of a class action claim under the TCPA is not appropriate.

Accordingly,

IT IS HEREBY ORDERED that Plaintiff Johnny O'Connor's motion for class certification [#45] is DENIED.

A Rule 16 Conference will be set in this matter in an separate order.

[1] I note that the complaint gives conflicting dates as to w hen Diversified acquired the debt. Paragraph 15 of the complaint states that it

was on July, 23, 2011 while paragraph 7 states that it was acquired on July 24, 2013. For purposes of deciding the present class action certification motion, it makes no difference whether it was the 23rd or the 24th.

[2] The definitions of the classes were altered in O'Connor's motion and memorandum in support of class certification. Although this is not the proper procedure to modify a class definition, I will use the modified definitions in ruling upon the motion.

[3] As noted above, O'Connor has changed the definitions of the two classes from his second amended complaint. His complaint did not limit the classes to U.S. Cellular debt collection actions. In ruling on the present motion, I will use the definitions of classes that O'Connor presents in his motion and memorandum in support of class certification.

[4] O'Connor alternatively identifies Diversified's methods as "quick calling." O'Connor asserts that these calls are made within the thirty day dispute period provided by 15 U.S.C. § 1692g. However, as stated above, the thirty day dispute period does not run from the date the debt collector acquires the debt for collection. The thirty days referred to in section 1692g provides that if a debtor makes a written request within thirty days of being notified of their rights, the debt collector must cease collection efforts until the debt collector places verification information in the mail to the debtor.

[5] As with his FDCPA claim, the proposed TCPA class differs from the class asserted in O'Connor second amended complaint.

[6] I note that there is compelling evidence presented by Diversified that it did not use an ATDS when calling the U.S. Cellular debtors. Although Diversified has not moved for summary judgment on this basis, this fact is gives additional weight to my decision not to certify a TCPA class.

[7] "Because we find that autodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the `prior express consent' of the called party, we clarify that such calls are permissible. We conclude that the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt."

[8] O'Connor concedes this point in his reply brief in which he states "The 2008 FCC ruling liberalized the statute and allowed a debt collector such as Defendant to piggy-back on appropriate consent consent given to an original creditor like U.S. Cellular." (Doc. # 49, Reply Br. at 2, n. 1)

Save trees - read court opinions online on Google Scholar.