**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| Jamie Davis, <br><br>      Plaintiff, <br><br> v. <br><br><br>Diversified Consultants, Inc.; and <br>DOES 1-10, inclusive, <br><br>      Defendants. | Civil Action No.: 1:13-cv-10875-FDS |

## <u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S</u>
## <u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

### <u>INTRODUCTION</u>

  Plaintiff Jamie Davis ("Davis"), by and through undersigned counsel, submits this Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment against Defendant Diversified Consultants, Inc. ("DCI") for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227.

  The TCPA, 47 U.S.C. § 227(b)(1)(iii), prohibits calls to cellular telephones by an Automatic Telephone Dialing System ("ATDS"), commonly referred to as a robo-dialer, without the prior express consent of the called party.  The undisputed facts show that 1) DCI called Plaintiff's cellular telephone sixty (60) times, 2) DCI used an ATDS called LiveVox to make the calls, 3) DCI knew or should have known LiveVox was an ATDS, and 4) DCI acquired the number through "skip-tracing" (a type of background search), it had no evidence of consent and Davis did not consent to the calls.

  Pursuant to the TCPA, 47 U.S.C. § 227(b)(3), DCI is liable for $500 for each of the sixty calls.  Further, because DCI knew that LiveVox was, or was likely to be an ATDS, and because DCI had absolutely no reason to believe there was consent to dial the Plaintiff's telephone

number, treble damages of $1,500 are warranted. *Id*.; *Echevvaria v. Diversified Consultants, Inc.*, 2014 WL 929275, *11 (S.D.N.Y., Feb. 28, 2014) (awarding treble damages against DCI for knowing violations of the TCPA). Therefore, Plaintiff requests the Court enter judgment against DCI for $90,000 and costs.

## CONCISE STATEMENT OF MATERIAL FACTS

1. DCI is a debt collector. (Pye Tr. 17:1-5).[1]

2. On July 9, 2012, DCI acquired, and called Davis concerning, an account belonging to a "Rosalee Pagan." (Pye Tr. 25:6-21).

3. Davis is not Rosalee Pagan, he does not know Rosalee Pagan and had never heard of Rosalee Pagan. (Davis Tr. 16:3-13).[2]

4. On July 15, 2012, DCI conducted a skip trace with a company called Innovis whom DCI pays to acquire and provide location information and telephone numbers. (Pye Tr. 25:18-26:11).

5. Innovis provided DCI the telephone number (857) XXX-8596 (the "8596 number"). *Id*. (number partially redetected for privacy considerations).

6. The 8596 number is Davis' MetroPCS cellular telephone number. (Davis Tr. 15-16).

7. On August 1, 2012, DCI loaded the 8596 number into the LiveVox system and proceeded to call. (Pye Tr. 26: 12-18).

*The LiveVox System*

8. Every call DCI makes is made through the LiveVox system. *Id*. at 26:16.

---

[1] "Pye Tr." refers to the deposition transcript of DCI's Rule 30(b)(6) designee, Mavis-Ann Pye, portions of which are submitted as Exhibit A to the Lemberg Declaration.
[2] "Davis Tr." refers to the deposition transcript of the Plaintiff, portions of which are submitted as Exhibit B to the Lemberg Declaration.

9. LiveVox is separate company that provides an off-site predictive dialer DCI uses to make all DCI phone calls. *Id*. at 21:12-22:6.

10. The Rule 30(b)(6) designee testified "[w]e use a predictive dialer to make phone calls." *Id*. at 22:5-6.

11. With LiveVox, DCI has the "ability to make millions of phone calls a day," an ability it "needs." *Id*. at 70:25-71:7.

12. If DCI is making a million calls a day, those phone numbers are placed in files and uploaded to LiveVox by DCI. *Id*. at 73:25-74:5.

13. "Uploading a campaign or file would be the numbers [DCI] want[s] to call." *Id*. at 81:4-5.

14. With LiveVox, DCI has "the option to store information or phone numbers into the system, [the] LiveVox system, for up to 30 days." *Id*. at 80:11-13. LiveVox "has the capacity to obtain - - retain them for up to 30 days." *Id*. at 80:24-25.

15. LiveVox dials the numbers throughout the day. *Id*. at 62:11-15.

16. If someone picks up a call, the call is then transferred to a DCI collector. *Id*. at 31:13-24; 57:7-11.

17. LiveVox also has the capacity to dial sequentially. *Id*. at 89:17-24.

18. In deciding whether to "use the LiveVox system, DCI relied upon, among other things, a memo it received from LiveVox (the "LiveVox Memo"). (January 6, 2014, Pye Declaration).[3]

19. The LiveVox Memo sets forth that LiveVox is "able to store or produce numbers to be called." (Exhibit C page 1).

---

[3] The Pye Declaration and its Exhibit, submitted by DCI in the matter Echevvaria v. Diversified Consultants, Inc., No. 17, 13-cv-04980-LAK (S.D.N.Y.), is submitted as Exhibit C to the Lemberg Declaration.

3

20. The LiveVox Memo sets forth that a court had ruled that "LiveVox's Application Service is indeed an ATDS that is subject to the TCPA." *Id*.

*Calls to Davis*

21. DCI has produced a "list of every call that LiveVox made" to the 8596 number (the "Dial List"). *Id*. at 31:1-8 (deposition Exhibit 5).[4]

22. The Dial List shows sixty (60) calls to the 8596 number between August 1, 2012, and November 15, 2012. (Exhibit D).

23. The Dial List shows five (5) inbound calls from the 8596 number. (Pye Tr. 35:12-18; Exhibit D August 9th, September 5th, and three on November 15th).

*The "Express Consent" Affirmative Defense*

24. DCI's Ninth Affirmative Defense sets forth "[a]ny calls made to the plaintiff were made with express consent." (Answer, Doc. No. 5 at 4).

25. DCI does not have any evidence that Davis consented to being called at the 8596 number. (Pye Tr. 27:24-28:2).

26. DCI never had any evidence that Davis consented to being called at the 8596 number. *Id*. at 28:3-7.

27. DCI did not have any evidence to claim in its answer that "any calls made to the plaintiff were made with express consent." *Id*.

*DCI's Discovery Responses*

28. In its Interrogatory Responses, DCI stated as fact that "[n]o calls were made using an ATDS or Predictive Dialer." (Responses to Int. No. 5 & 17).[5]

29. The Interrogatories were "signed under the penalties of perjury" by Mavis-Ann

---

[4] The Dial List is submitted as Exhibit D to the Lemberg Declaration.
[5] DCI's Interrogatory Responses are attached as Exhibit E to the Lemberg Declaration.

Pye on February 12, 2014.  *Id*. at 7.

30.  Contra the sworn Interrogatory Responses, at her February 28, 2014 deposition, Ms. Pye testified "[w]e use a predictive dialer to make phone calls" (*Id*. at 22:5-6) and that the LiveVox predictive dialer is the "phone system [DCI uses] to make the calls" (*Id*. at 21:12-15).

31.  DCI's website, under "Pre-Collection Services" advertised that it has great "flexibility available to us via our Livevox Predictive Dialer" (the "Website"):

> level and this includes your Pre-Collect (Early Out) needs. With the flexibility available to us via our Livevox Predictive Dialer, the exceptional functionality of Latitude Software's exciting Latitude Collections System, the high quality training and our motivated employees; DCI possesses the resources to take on any project regardless of the complexity or size.

(Pye Tr. 20:1-15 (deposition Exhibit 3)).[6]

## ARGUMENT

### I. STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Barbour v. Dynamics Research Corp.,* 63 F.3d 32, 36 (1st Cir. 1995). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Id.* (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)).  The Court must disregard evidence proffered by a party bearing the burden of proof wherever a jury would be free to disbelieve such evidence. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 135 (2000).

---

[6] The Website is submitted as Exhibit F to the Lemberg Declaration.

## II. THE TCPA

"Congress passed the TCPA to protect individual consumers from receiving intrusive and unwanted calls." *Gager*, 727 F.3d at 268 (*citing Mims v. Arrow Fin. Servs., LLC*, —U.S.—, 132 S. Ct. 740, 745, 181 L. Ed. 2d 881 (2012). TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), makes unlawful:

> any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

47 U.S.C. § 227(b)(1)(A)(iii).

To establish a TCPA violation, Plaintiff must show 1) he was called on his cellular telephone 2) by an automatic telephone dialing system.

The First Circuit has not yet addressed whether "prior express consent" is an affirmative defense. The matter is generally treated as an affirmative defense as the FCC has ruled that the calling entity "should be responsible for demonstrating that the consumer provided prior express consent." *Heinrichs v. Wells Fargo Bank, N.A.*, 2014 WL 985558, *2 (N.D. Cal., Mar. 7, 2014) (*citing In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, Request of A CA Int'l for Clarification and Declaratory Ruling,* 23 F.C.C.R. 559, 565 (Jan. 4, 2008)); *Echevvaria*, 2014 WL 929275 at *7; *Kolinek v. Walgreen Co.*, 2014 WL 518174, *2 (N.D. Ill., Feb. 10, 2014). Here, DCI asserts express consent as an affirmative defense in its answer.

## III. DCI Called Plaintiff's Cellular Telephone

DCI called the 8596 number. The 8596 number is Davis' MetroPCS cellular telephone number. Thus, the first element of the TCPA claim is satisfied.

## IV. **LiveVox is an ATDS**

The second element is also satisfied; LiveVox is an ATDS. *Echevvaria*, 2014 WL 929275 at *5 ("[t]he LiveVox System is an Automatic Telephone Dialing System"). The TCPA defines "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § Section 227(a)(1).

First, the undisputed facts show that LiveVox has the capacity to store numbers:

- The LiveVox Memo sets forth that LiveVox is "able to store or produce numbers to be called." (Exhibit C page 1).

- If DCI is making a million calls a day, those phone numbers are placed in files and uploaded to LiveVox by DCI. (Pye Tr. 73:25-74:5).

- DCI has "the option to store information or phone numbers into the system, [the] LiveVox system, for up to 30 days." *Id*. at 80:11-13.

- LiveVox "has the capacity to obtain - - retain them for up to 30 days." *Id*. at 80:24-25.

Second, the undisputed facts show that LiveVox has the capacity to dial numbers sequentially:

> Q  But the LiveVox system has the capacity to dial sequentially, does it not?
> A  I guess, yeah.
> Q  Is that yes?
> A  Yes.
> Q  In fact, that's their default option, is it not?
> A  Correct.

(Pye Tr. 89:17-24).

7

Third, the undisputed facts also show that LiveVox dialed such numbers:

- LiveVox has the "ability to make millions of phone calls a day." (Pye Tr. 70:25-71:7).

- LiveVox dials the numbers throughout the day. *Id*. at 62:11-15.

- The timing of calls is "designated by the settings that [the Director of Data Services] has installed or set up that morning." *Id*. at 61:15-20.

- If someone picks up a call, the call is then transferred to a DCI collector. *Id*. at 31:13-24; 57:7-11.

- Every call DCI makes is made through the LiveVox system. *Id*. at 26:16.

Therefore, under the straightforward definition of an ATDS set forth in the TCPA, LiveVox is an ATDS because it has the capacity to store telephone numbers and dial them sequentially.

Furthermore, LiveVox is an ATDS because it is a predictive dialer which calls from lists of numbers. The FCC has interpreted an ATDS as "cover[ing] any equipment that has the specified capacity to generate numbers and dial them without human intervention, regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG Docket No. 02–278, Report and Order, 18 FCC Rcd. 14014, 14092 (2003) ("2003 TCPA Order") (emphasis added). A predictive dialer is considered an ATDS under the TCPA. *Id.* at 14093. "A predictive dialer is ... hardware, when paired with certain software, [which] has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers ... from a database of numbers." *Id.* at 14091. The FCC states that "the basic function of such equipment ... [is] the

8

capacity to dial numbers without human intervention." *In the Matter of Rules & Regulations Implementing the Te. Consumer Prot. Act of 1991,* 23 F.C.C.R. 559, 566 (2008). *See also*, *Jones v. FMA Alliance Ltd.*, 2013 WL 5719515, *1, n. 9 (D. Mass. Oct. 17, 2013) ("The FCC determined that 'equipment that dials a list of numbers (such as a business's list of customers), rather than dials random or sequential numbers, is still an ATDS, because 'the basic function of such dialing equipment' is the same—'the capacity to dial numbers without human intervention.'") (citation omitted); *Echevvaria* 2014 WL 929275 at *4-5; *Sherman v. YahooA Inc.*, 2014 WL 369384, *5-6 (S.D. Cal., Feb. 3, 2014).

Here, the undisputed facts show that DCI loads lists of numbers into LiveVox to dial:

- DCI uploads files of numbers for the system to dial. (Pye Tr. 81:4-82:1).

The Rule 30(b)(6) designee further admitted: "[w]e use a predictive dialer to make phone calls." *Id.* at 22:5-6; *see also Echevvaria*, 2014 WL 929275 at *5-6 (Jamie Sullivan, Diversified's Director of Data Services, "repeatedly admitted" that LiveVox "acts as a predictive dialer."). In *Echevvaria*, DCI's Director of Data Services gave the following example:

> [S]ince it's a predictive dialer ... it has an algorithm that decides how many lines they need to increase it by or when they need to start making calling. So, if all your agents are on the phone or let's say there are a couple of them not ready and all of them are on the phone and there's no one available, then the lines dialed will go to zero, and there won't be any calls made when [LiveVox is] waiting for somebody to be available again.
>
> Then let's say one agent becomes available. And let's say [LiveVox is] dialing 50 lines per agent as an example. Then, if you're looking at the management software, it will show 50 lines start dialing to try and get a call to the available agent.

2014 WL 929275 at *6.[7]  Here, Ms. Pye admitted the same that LiveVox is a predictive dialer.

---

[7] Mr. Sullivan was unable to be deposed when Davis' counsel travelled to Florida for depositions in this case.  Ms. Mavis-Ann Pye, the Vice President of Compliance, advised, concerning her company's technical director "I think he's on vacation right now.  I don't know if he's here today." (Pye Tr. 63:25-64:12).

Thus, the second element of Plaintiff's claim is satisfied: LiveVox is a predictive dialer, it is an ATDS under the TCPA, and DCI is liable for each of the sixty calls placed to Davis' cellular telephone.

## V.     There was No Consent to the Calls

Despite the representations in DCI's answer, DCI does not have, and *has never had*, any evidence that the recipient of the phone calls to the 8596 number consented to being called. (Pye Tr. 27:24-28:7). Nor would it, as DCI did not get the number from Davis, DCI's client or Rosalee Pagan, rather, DCI purchased the number the third party source, Innovis. (*Id.* at 25:18-26:11). For his part, Davis was an innocent bystander when DCI purchased his personal information from Innovis, plugged his phone number into its robo-dialer and began to barrage him with calls.

## VI.    Damages

The TCPA provides, at a minimum, "$500 in damages for each such violation" of the Act. 47 U.S.C. § 227(b)(3)(B). The Dial List shows sixty (60) calls between August 1, 2012, and November 15, 2012. (Exhibit D). Therefore, DCI is liable for $30,000 in statutory damages.

The TCPA provides for trebling of damages when the "defendant willfully, or knowingly violated" the TCPA. 47 U.S.C. § 227(b)(3). "[T]o establish a *knowing* violation of the TCPA for an award of treble damages, a plaintiff must prove only that the defendant knew that it acted or failed to act in a manner that violated the statute, not that the defendant knew that the conduct itself constituted a violation of the law." *Stewart v. Regent Asset Mgmt. Solutions*, 2011 WL 1766018, *7 (N.D. Ga., May 4, 2011) (*quoting Charvat v. Ryan*, 2007-Ohio-6833, 116 Ohio St. 3d 394, 398, 879 N.E.2d 765, 769 (2007) (emphasis in original); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 WL 1154206, *4 (N.D. Ill., Mar. 19, 2013) ("'willfully' or 'knowingly' simply requires that the act be intentional or volitional, as opposed to inadvertent, and not that

defendant must have known that the conduct would violate the statute."); *Sengenberger v. Credit Control Servs., Inc.*, 2010 WL 1791270, *6 (N.D. Ill., May 5, 2010) *adhered to on reconsideration*, 2010 WL 6373008 (N.D. Ill., June 17, 2010) ("willfully" means that the defendant acted voluntarily, and under its own free will, regardless of whether the defendant knew that it was acting in violation of the statute). Specific intent to violate the statute is not required; treble damages are available when the defendant knowingly engages in the proscribed conduct. Here, DCI knowingly engaged in the conduct that violated the statute.

First, DCI knew or should have known that LiveVox was an ATDS and DCI intentionally used LiveVox. The LiveVox Memorandum, which DCI relied upon before adopting the system, specifically warned that 1) it could store and dial numbers and 2) it had been found it be an ATDS subject to the TCPA. While DCI, strangely, denied it outright in interrogatory responses, Ms. Pye testified that DCI uses a predicative dialer to make all its calls, that numbers are loaded and stored into LiveVox for dialing and can be stored for up to thirty days. Moreover, DCI even bragged about its predictive dialer on the Website and has been subject to lawsuits stemming from its use. DCI chose to use LiveVox because it was efficient and makes it money by allowing DCI to make millions of calls a day; DCI cannot credibly claim it did not know it was using an ATDS and it certainly cannot deny intentionally using LiveVox.

Second, DCI knew or should have known that it did not have consent to call the 8596 number – whether it belonged to Davis or Ms. Pagan, the actual debtor. *Harris v. World Fin. Network Nat. Bank*, 867 F. Supp. 2d 888 (E.D. Mich. 2012) is instructive. There, as here, a debt collector used an ATDS to call the wrong party. Unlike the present case, the debt collector acquired the plaintiff's number from the creditor, the debt collector's client, who had acquired the number from the actual debtor Morgan. Because Morgan had provided consent to the

creditor, the debt collector could justifiably believe it had consent to call.  In fact, the actual called party, Harris, had not consented to calls and, therefore, the debt collector violated the TCPA by calling him.  Because there was no consent, the court awarded $500 per call as mandated by the statute.  For a willful and knowing violation, however, the Court found relevant the account records which showed the debt collector thought it had consent because it was calling the number supplied by the creditor. 867 F. Supp. 2d at 898. Because the debt collector thought it had proper consent, via the creditor, there was no willful or knowing violation until Harris put the collector on notice.  In the present case, DCI did not have even a shade of proper consent.  It obtained the number via Innovis, a skip trace company, and not from the creditor.  Even if DCI was calling the correct person, it had no reason to believe that the 8596 number was provided as a contact number; indeed, the number had *not* been provided as a contact number, DCI had to purchase it from a third party.  In *Harris*, the fact that the debt collector acquired the number from the creditor was proof of the debt collector's lack of willfulness; here, the fact that DCI acquired the number from Innovis, is proof of DCI's willful and knowing disregard of the called party's consent.

In *Echevvaria*, the court found that DCI acted intentionally after the plaintiff told DCI that it called the wrong party.  While Davis likewise informed DCI (Davis Tr. 23), TCPA liability does not hinge on whether the called party is the "intended recipient" or right or wrong party. *Osorio v. State Farm Bank, F.S.B.*, 2014 WL 1258023, *6-7 (11th Cir., Mar. 28, 2014); *Soppet v. Enhanced Recovery Co., LLC,* 679 F.3d 637, 640 (7th Cir. 2012).  The question for treble damages, rather, is whether DCI knew or should have known it called without consent and not whether DCI knew it was calling the wrong party.  The *Echevvaria* court did not consider the correct question.  Considered, it is clear that DCI knew or should have known it did not have

consent. DCI admits that it had absolutely no evidence whatsoever of the called party's consent to receive calls at the 8596 number. It simply purchased the information from a third party and plugged the number into LiveVox. While an efficient system to be sure, it is one where consent of the called party to receive auto-dialed calls from DCI is ignored. Simply put, DCI could not have been bothered to care whether it had consent to call the 8596 number with LiveVox. That is knowing and willful disregard of consent and warrants treble damages.

## CONCLUSION

For the foregoing, Plaintiff respectfully requests the Court grant his motion for partial summary judgment on his claim under the Telephone Consumer Protection Act and enter a judgment against DCI for $90,000 and for costs.

Dated: March 31, 2014

Respectfully submitted,

By  */s/ Sergei Lemberg*
Sergei Lemberg (BBO# 650671)
LEMBERG LAW, LLC
1100 Summer Street, 3rd Floor
Stamford, CT 06905
Telephone: (203) 653-2250
Facsimile: (203) 653-3424
Attorneys for Plaintiff

## **CERTIFICATE OF SERVICE**

  I hereby certify that on March 31, 2014, I electronically filed the foregoing through the CM/ECF system which sent notice of such filing to the following:

John J. O'Connor
PEABODY & ARNOLD LLP
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210
*Attorney for Defendant*

                */s/ Sergei Lemberg*
                Sergei Lemberg