UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Jamie Davis,<br>    Plaintiff<br>v.<br>Diversified Consultants, Inc., and<br>DOES 1-10, inclusive,<br>    Defendants | Civil Action No. 1:13-cv-10875-FDS |

**MEMORANDUM OF DEFENDANT DIVERSIFIED CONSULTANTS, INC. IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

INTRODUCTION

  The Plaintiff Jamie Davis ("Davis") alleges that the Defendant Diversified Consultants, Inc. ("DCI") violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA"), the Fair Debt Collection Practices Act ("FDCPA"), and invaded Davis's privacy in connection with DCI's collection efforts.  Davis's TCPA claim fails because DCI did not use an automatic telephone dialing system ("ATDS") within the meaning of the statute to call Davis.  Davis's FDCPA claim fails because DCI did not engage in any conduct that was unfair, unconscionable, or intended to annoy or harass.  Finally, Davis's state-law invasion of privacy claim fails because there is no such claim in Massachusetts on these facts and, in any event, DCI did not engage in any outrageous conduct.  The material facts in this case are undisputed and give rise to no jury claims.  Accordingly, DCI is entitled to summary judgment as to all claims against it.

## STATEMENT OF FACTS

1. DCI is a licensed collection agency with a principal place of business in Jacksonville, Florida. (Affidavit of Rafal Leszczynski ("Rafal Aff.") ¶ 2).

2. Davis is a resident of Cambridge, Massachusetts. (Exhibit B to John J. O'Connor Affidavit, Complaint ¶ 4).

3. Davis alleges that DCI contacted him on his cellular telephone in an attempt to collect a debt incurred by someone named "Rosemary". (Exhibit B to O'Connor Affidavit, Complaint ¶ 12).

4. Davis alleges that he informed DCI that he did not know anyone named "Rosemary" and that no such individual lived with him. (Exhibit B to O'Connor Affidavit, Complaint ¶¶ 13-15).

5. Davis claims to have answered only about seven calls DCI allegedly made. Davis did not answer any of the other calls DCI allegedly made to Davis and no messages were left with the exception of possibly one message. Davis admitted that he considered only one of the callers to have been rude to him, by implying (allegedly) that Davis was not being truthful with him. (Exhibit A to O'Connor Affidavit, Deposition Transcript of Jamie Davis, p. 20 lines 20-23, p. 23 line 20 to p. 24 line 2, p. 25 lines 5-11, p. 28 lines 18-20, p. 29, p. 30 line 11 to p. 31 line 18).

6. Davis alleges that DCI violated the FDCPA by causing his telephone to ring repeatedly, by engaging Davis in telephone communications with the intent to annoy, and by using unfair and unconscionable means to collect a debt. (Exhibit B to O'Connor Affidavit, Complaint ¶¶ 19-21).

7. DCI did not use an automatic telephone dialing system as defined by the TCPA in connection with the complained of telephone calls. (Rafal Aff. ¶¶ 4-8).

8. To contact debtors by telephone, DCI utilizes a third-party, independent contractor, a company called LiveVox. LiveVox provides a hosted-dialer program that makes calls through a "Voice-Over-Internet Protocol" ("VOIP") system. (Rafal Aff. ¶ 4).

9. The LiveVox system does <u>not</u> have the capacity to produce or store telephone numbers using a random or sequential number generator, or to call numbers without human intervention. (Rafal Aff. ¶ 5).

10. On a daily basis, DCI's Director of Operations and Dialing Systems is required to assemble telephone numbers to be dialed by LiveVox. (Rafal Aff. ¶ 5).

11. The practice of the Director of Operations and Dialing Systems is to obtain the telephone numbers from the clients placing the account with DCI, then to download them to the LiveVox system. (Rafal Aff. ¶ 5).

12. The only telephone numbers that are called from this system are those specific numbers provided by DCI's clients and downloaded into the LiveVox system. (<u>Exhibit A</u>, Rafal Aff. ¶ 5).

13. LiveVox, not DCI, makes the calls to debtors. (Rafal Aff. ¶ 6).

14. LiveVox does not store the numbers input by the Director of Operations and Dialing Systems. (Rafal Aff. ¶ 7).

15. At 1:00 a.m., all numbers are wiped off of the system and no information remains on the system. (Rafal Aff. ¶ 7).

16. The numbers are not available to be reused. (Rafal Aff. ¶ 7).

17. Instead, numbers to be called have been reassembled and revised to reflect any changes on the account. (Rafal Aff. ¶ 7).

18. When DCI's Director of Operations and Dialing Systems logs onto the system the next day, there are no campaigns or information reflected on the system. (Rafal Aff. ¶ 7).

19. The Director of Operations and Dialing Systems is required on a daily basis to load the system with the next batch of accounts and contact information provided by DCI's clients. (Rafal Aff. ¶ 7).

20. Instead of dialing telephone numbers stored or produced with a random or sequential number generator, DCI relies on LiveVox to contact debtors strategically. (Rafal Aff. ¶ 8).

21. The telephone numbers are provided to DCI by the client. (Rafal Aff. ¶ 8).

22. These telephone numbers are not, and never have been, provided to DCI or called using a random or sequential number generator. (Rafal Aff. ¶ 8).

23. When a debtor's account and contact information is retrieved by a DCI collection associate, these telephone calls are not produced using a random or sequential number generator. (Rafal Aff. ¶ 9).

24. The LiveVox system does not call debtors in a sequential order. (Rafal Aff. ¶ 9).

25. LiveVox places calls to debtors only during those times of the day in which it is entitled to call pursuant to the FDCPA and state law. (Rafal Aff. ¶ 9).

26. At no time did DCI or LiveVox make any telephone calls to Davis with the intent to annoy or harass him. It only called him and communicated six times, never left a voicemail, and never called with intent to harass or annoy. (Rafal Aff. ¶ 10).

27. On February 24, 2014, the Court ordered that, "If expert testimony is needed, the parties shall notify the Court in writing by 3/19/2014." The Plaintiff provided no such notice

here.  Nor has the Plaintiff identified any expert in response to DCI's expert interrogatories, or provided an expert report.

## ARGUMENT

I.    <u>DCI IS ENTITLED TO SUMMARY JUDGMENT DISMISSING THE TCPA CLAIM.</u>

    A.    <u>The Plaintiff Does Not Have an Expert and Therefore Cannot Go Forward.</u>

On February 24, 2014, this Court ordered that "[i]f expert testimony is needed, the parties shall notify the Court in writing by 3/19/14."  The Plaintiff did not notify the Court of any experts.  Nor has the Plaintiff disclosed an expert in his answers to expert interrogatories, or produced an expert report.  (SOF ¶ 27) The TCPA does not define or clarify exactly what it means by an ATDS, and the issue is obviously a sophisticated one that requires a grasp of computer, internet, and telephone technology issues that are beyond the common understanding of jurors. These are not issues as to which the Court can take judicial notice. To prevail on his TCPA claim, the Plaintiff <u>must</u> present expert testimony that DCI used an ATDS to call Davis.  This is the standard practice in such cases.  <u>See</u>, <u>e.g.</u>, <u>Dominguez v. YahooZ, Inc</u>., 2014 WL 1096051, **4-6 (E.D. Pa. Mar. 20, 2014); <u>Satterfield v. Simon & Schuster, Inc.</u>, 569 F.3d 946 (9th Cir. 2009).  Because the Plaintiff has no expert, he cannot go forward on his TCPA claim as a matter of law.

    B.    <u>The Plaintiff Lacks Standing.</u>

The TCPA is available only to the intended recipient of a cell phone call.  A party who is not the intended recipient but receives a call in error lacks standing to assert TCPA claims.  <u>See</u> <u>Cellco Partnership v. Dealers Warranty, LLC</u>, 2010 WL 3946713, No. 09-1814 (D.N.J. Oct. 5, 2010) (only intended recipient of call has TCPA standing).  <u>See also</u> <u>Leyse v. Bank of America</u>, 2010 WL 2382400 (S.D.N.Y. June 14, 2010).  It is undisputed that the Plaintiff here was not the intended recipient of the LiveVox calls, so he has no standing.

5

C.      In Any Event, DCI Did Not Use an ATDS to Make the Disputed Calls.

The TCPA prohibits telephone calls to cellular telephones, except in an emergency or with the recipient's prior consent, using "automatic telephone dialing systems", which have "the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator; and . . . to dial such numbers." 47 U.S.C. § 227 (a)(1). Plaintiff's TCPA thus claim requires proof of use by DCI of an ATDS as defined by the statute.  "When evaluating the issue of whether equipment is an ATDS, the statute's clear language mandates that the focus must be on whether the equipment has the *capacity* 'to store or produce telephone numbers to be called, using a random or sequential number generator.'"  Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 951 (9th Cir. 2009) (emphasis in original). The Plaintiff cannot meet this burden. The LiveVox system does not have this capacity. (SOF ¶ 9) DCI did not use an ATDS as defined by the TCPA when making the complained of calls.  (SOF ¶¶ 7, 8); See id. See also O'Connor v. Diversified Consultants, Inc., 2013 WL 2319342, No. 4:11-cv-01722-RWS (E.D. Mo. May 28, 2013) (denying class certification for TCPA claim and finding that "there [was] compelling evidence presented by Diversified that it did not use an ATDS when calling the . . . debtors"). Rather than making calls via an ATDS, DCI utilized the services of an independent contractor: LiveVox, which is a hosted-dialer program that employs a "Voice-Over-Internet Protocol" ("VOIP") system.  (SOF ¶ 8)

LiveVox's system does <u>not</u> have the capacity to produce or store telephone numbers using a random or sequential number generator, or to call numbers without human intervention. (SOF ¶ 9)  In fact, on a daily basis, DCI's Director of Data Services is required to provide telephone numbers to be dialed by LiveVox.  (SOF ¶ 10)  The Director of Data Services obtains the telephone numbers from the respective client placing the account from private placements

and downloads them to be called by LiveVox. (SOF ¶ 11) The telephone numbers that are called from this system include those specific numbers provided by DCI's clients. (SOF ¶ 12)

The system utilized by DCI also does not store the numbers input by the Director of Data Services. (SOF ¶ 13) At 1:00 a.m., all numbers are wiped off of the system and no information remains on the system. (SOF ¶ 14) The numbers are not available to be reused. (SOF ¶15). Instead, the accounts have to be rebuilt to reflect any changes on the account. (SOF ¶16). When DCI's Director of Data Services logs onto the system the next day, there are no campaigns or information reflected on the system. (SOF ¶ 17). The Director of Data Services is required on a daily basis to load the system with the next batch of accounts and contact information provided by DCI's clients. (SOF ¶ 18)

DCI did not make any telephone calls to the Plaintiff's cellular telephone numbers using an ATDS as defined by the TCPA. Accordingly, the Plaintiff's TCPA claim must fail as a matter of law.

C. <u>An Independent, Third-Party Contractor, Not DCI, Made the Disputed Calls.</u>

To establish TCPA liability, the Plaintiff must prove among other things that DCI is responsible for the allegedly violative telephone calls. 47 U.S.C. § 227b(1)(A). The Plaintiff cannot make this showing here. The undisputed evidence is that a third-party independent contractor, LiveVox (using independent telephone carriers), made the calls to the Plaintiff, not DCI. As set forth in the Affidavit of Rafal Leszczynski, DCI uses an independent contractor to make collection calls to debtors. DCI provides information to LiveVox, which then makes the calls. The LiveVox system, not DCI's collection agents, places the calls. All equipment, software, and technology necessary to place the calls is provided and controlled by LiveVox. (SOF ¶¶ 8-13) It then places the calls through independent carriers. In analogous circumstances,

courts repeatedly have reasoned that defendants (just like DCI here) that were not controlling the calls could not have TCPA liability.  See, e.g., Mey v. Pinnacle Sec., LLC, 2012 WL 4009718, at *3-4 (N.D.W. Va. Sept. 12, 2012); Thomas v. Taco Bell Corp., 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012); Mais v. Gulf Cost Collection Bureau, Inc., No. 0-11-cv-61936-RNS (S.D. Fla. May 8, 2013); Friedman v. Massage Envy Franchising, LLC, 2013 WL 3026641 at *7 (S.D. Cal. June 13, 2013).  Because DCI did not make any calls, the Plaintiff's TCPA claim fails as a matter of law.

II.     DCI IS ENTITLED TO SUMMARY JUDGMENT ON THE FDCPA CLAIM.

The Plaintiff alleges that DCI committed two FDCPA violations.  First, paragraphs 19-20 of the Complaint allege that DCI violated 15 U.S.C. § 1692d by engaging "in behavior the natural consequence of which is to harass, oppress or abuse the Plaintiff in the collection of a debt" and § 1692d(5) by "causing a telephone to ring repeatedly and engag[ing] the Plaintiff in telephone conversations, with the intent to annoy and harass."  Second, paragraph 21 of the Complaint alleges that DCI violated 15 U.S.C. § 1692f by using "unfair and unconscionable means to collect a debt."  As a matter of law, DCI committed no violations.

A.     DCI Did Not Call Plaintiff Excessively With Intent to Annoy, Abuse, or Harass in Violation of 15 U.S.C. § 1692d.

DCI neither called the Plaintiff excessively nor called Plaintiff with intent to annoy, abuse, or harass him.  In evaluating claims under Section 1692d(5), courts and the Federal Trade Commission construe the statutory term "repeatedly" to mean calling with "excessive frequency under the circumstances."  Smith v. Accounts Research, Inc., No. 3:10-cv-213, 2012 U.S. Dist. LEXIS 11317 *19-22 (E. Dist. Tenn. Jan. 31, 2012) (citing cases).  Id.  Continuously" means "making a series of calls, one right after the other."  The mere fact that a call is unwelcome is not evidence of a violation.  Id.  And evidence of a number of unanswered calls does not establish a

violation. Id.; see also Martin v. Select Portfolio Serving Hold. Corp., No. 1:05-cv-273, 2008 WL 618788 *6 (S.D. Ohio Mar. 3, 2008). To prevail under this section, Plaintiff must allege and prove that the contents of DCI's calls were harassing, abusive, or misleading, and that that was the DCI's intent. Martin, No. 1:05-cv-273, 2008 WL 618788 *6; Smith, 2012 U.S. Dist. LEXIS 11317; Juras v. Aman Collection Serv., Inc., 829 F.2d 739, 741 (9th Cir. 1987), cert. denied, 488 U.S. 875 (1988).

Davis alleges that he answered only seven calls allegedly made by DCI. Davis did not answer any of the other calls DCI allegedly made to Davis and no messages were left. (SOF ¶ 5) Such a call volume hardly gives rise to a Section 1692d(5) claim. Indeed, courts in many cases involving far more calls than were made here have rejected Section 1692d(5) claims as a matter of law. E.g., Tarrant v. Northland Group, Inc., No. 3:10-cv-1204, 2012 WL 140431 (M.D. TN Jan. 18, 2012 (39 calls in four months; summary judgment for defendant); Chavious v. CBE Group, Inc., No. 10-cv-1293, 2012 WL 113509 (E.D.N.Y. 2012) (36 calls in two months; summary judgment for defendant); Worsham v. Accounts Receivables Mgmt., Inc., No. JKB-10-3051, 2011 WL 5873107 (D. Md. Nov. 22, 2011) (rejecting FDCPA claim based on unanswered telephone calls; unanswered calls are not FDCPA communications) (citing Wilfong v. Persolve, LLC, No. 10-3083, 2011 U.S. Dist. LEXIS 71068 at *10, report and recom. Adopted, 2011 U.S. Dist. LEXIS 71078 (D. Or. June 30, 2011)); Tucker v. CBE Group, Inc., 710 F. Supp. 2d 1301 (M.D. Fla. 2010) (granting summary judgment for collector who made 57 calls to debtor, including seven in one day); Katz v. Capital One, 2010 WL 1039850 (W.D. Va. Mar. 18, 2010) (granting summary judgment for collector who made 17 calls to debtor, including sometimes two calls per day); Saltzman v. I.C. Sys., 2009 WL 3190359 (E.D. Mich. Sept. 30, 2009) (granting

9

summary judgment for collector who made 20-50 unsuccessful calls and 2-10 successful calls in one month).

These authorities require summary judgment as to Davis's Section 1692d(5) claim. The alleged calls were not excessive as a matter of law. Davis answered only six or seven calls allegedly made by DCI. Davis did not answer any of the other calls allegedly made by DCI and is uncertain whether any messages were left. Also, he considered only one of the callers to have ever been rude to him, by implying that Davis was hiding something from him. (SOF ¶ 5) DCI denies that there were messages. DCI also denies acting with intent to abuse, annoy, or harass and Davis cannot show a pattern or other evidence suggestive of improper intent. (SOF ¶ 26) Given that Davis will be unable to prove that the contents of DCI's calls were intentionally harassing, abusive or misleading, his Section 1692d(5) claim should be dismissed as a matter of law.

      B.      DCI Did Not Use Unfair Or Unconscionable Means To Collect A Debt In Violation Of 15 U.S.C. ¶1692f.

Section 1692f of the FDCPA prohibits a debt collector from using any "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The statute lists eight non-exhaustive examples of § 1692f violations. However, "conduct that may be deemed 'unfair or unconscionable' is not limited to the acts enumerated in subsections (1) through (8)." Foti v. NCO Fin. Sys., Inc., 424 F.Supp.2d 643, 667 (S.D.N.Y.2006) (citation and internal quotation marks omitted). Rather, Section 1692f "allows the court to sanction improper conduct that the FDCPA fails to address specifically." Id. (citation and internal quotation marks omitted).

Here, Davis does not allege any "unfair or unconscionable" acts listed within subsections (1) through (8) of § 1692f. Additionally, Davis fails to allege any misconduct beyond that which

he alleges violates other FDCPA provisions (i.e., §1692d). Id. Accordingly, Davis has failed to present a jury claim under § 1692f, and DCI is entitled to judgment as a matter of law. See Sussman v. I.C. System, Inc., 928 F.Supp.2d 784 (S.D.N.Y. 2013) (holding consumer's allegations that debt collector placed more than 50 calls to his residence from ATDS after being notified to stop contacting consumer, and hung up the calls either prior to or as soon as a member of consumer's household or his voicemail answered the call, failed to rise to level of unfair or unconscionable, as required to state claim for violation of section 1692f).

III.    DCI DID NOT INVADE DAVIS'S PRIVACY AND IS ENTITLED TO SUMMARY JUDGMENT.

G.L. c. 214, § 1B, the privacy statute, provides in full that "[a] person shall have a right against unreasonable, substantial or serious interference with his privacy. The superior court shall have jurisdiction in equity to enforce such right and in connection therewith to award damages." Massachusetts does not recognize a theory of liability under the statute for making telephone calls that allegedly interfere with a plaintiff's privacy by intruding on his solitude and violating his interest in being left alone. Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 409 Mass. 514, 517 (1991).

Courts that have recognized a claim for invasion of privacy by intrusion upon seclusion have done so only where the facts clearly demonstrate outrageous, rather than merely annoying or upsetting, conduct. Rush v. Portfolio Recovery Services, LLC, 2013 WL 5645770, *15 (D.N.J. Oct. 17, 2013). In such cases, Courts have adopted the definition of the Restatement (Second) of Torts:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for the invasion of his privacy if the intrusion would be highly offensive to a reasonable person.

Restatement (Second) of Torts 652B (1977).  To prevail on an invasion of privacy by intrusion upon seclusion claim, a plaintiff "must establish that the intrusion 'would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object.'"  Rush, 2013 WL 5645770 at *14.  Persistent phone calls by a debt collector that result only in annoyance to a reasonable person cannot sustain an intrusion on seclusion claim.  Id. at *16.

The undisputed facts establish that Plaintiff found DCI's phone calls merely frustrating and annoying at worst.  (SOF ¶ 5)  Because persistent phone calls by a debt collector that result in only annoyance to a reasonable person cannot sustain an intrusion on seclusion claim, DCI is entitled to summary judgment on Plaintiff's claim for invasion of privacy by intrusion upon seclusion.

## CONCLUSION

For the foregoing reasons, Defendant Diversified Consultants, Inc.'s Motion for Summary Judgment should be granted and the Complaint should be dismissed with prejudice.

DIVERSIFIED CONSULTANTS, INC.,

By its attorneys,

/s/ John J. O'Connor
John J. O'Connor
BBO #555251
PEABODY & ARNOLD LLP
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA  02210-2261
Telephone: (617) 951-2100
joconnor@peabodyarnold.com

Date: March 31, 2014

**<u>CERTIFICATE OF SERVICE</u>**

      I do hereby certify, that on March 31, 2014, I served the within document, by causing a copy thereof, to be sent electronically to the registered participants in this case, if any, as identified on the Notice of Electronic Filing (NEF) and paper copies mailed, first class mail, postage prepaid to any non-registered participants in this case.

      /s/ John J. O'Connor

818616_1
15874-97276