**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| Jamie Davis, | : |
| | : |
| Plaintiff, | : Civil Action No.: 1:13-cv-10875-FDS |
| v. | : |
| | : |
| | : |
| Diversified Consultants, Inc.; and | : |
| DOES 1-10, inclusive, | : |
| | : |
| Defendants. | : |

## MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT BY DEFENDANT DIVERSIFIED CONSULTANTS, INC.

## INTRODUCTION

Jamie Davis ("Davis"), by and through undersigned counsel, submits this Memorandum of Law in Opposition to the Motion for Summary Judgment by Defendant Diversified Consultants, Inc. ("DCI"). The undisputed facts show that (1) DCI violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227, and that (2) Plaintiff's claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 and for common law invasion of privacy cannot be resolved at summary judgment.[1]

## CONCISE STATEMENT OF MATERIAL FACTS[2]

1. DCI is a debt collector. (Pye Tr. 17:1-5).[3]

2. On July 9, 2012, DCI acquired, and called Davis concerning, an account belonging to a "Rosalee Pagan." (Pye Tr. 25:6-21).

---

[1] Plaintiff has filed his own motion for partial summary judgment on the TCPA claim.

[2] Plaintiff has filed a response to DCI's separate Local Rule 56.1 statement of fact.

[3] "Pye Tr." refers to the deposition transcript of DCI's Rule 30(b)(6) designee, Mavis-Ann Pye, portions of which are submitted as Exhibit A to the Lemberg Declaration in Opposition to Summary Judgment.

3.      Davis is not Rosalee Pagan, he does not know Rosalee Pagan and had never heard of Rosalee Pagan. (Davis Tr. 16:3-13).[4]

4.      On July 15, 2012, DCI conducted a skip trace with a company called Innovis whom DCI pays to acquire and provide location information and telephone numbers. (Pye Tr. 25:18-26:11).

5.      Innovis provided DCI the telephone number (857) XXX-8596 (the "8596 number"). *Id*. (number partially redacted for privacy considerations).

6.      The 8596 number is Davis' MetroPCS cellular telephone number. (Davis Tr. 15-16).

7.      On August 1, 2012, DCI loaded the 8596 number into the LiveVox system and proceeded to call it. (Pye Tr. 26: 12-18).

*The LiveVox System*

8.      Every call DCI makes is made through the LiveVox system. *Id*. at 26:16.

9.      LiveVox is a separate company that provides an off-site predictive dialer DCI uses to make all DCI phone calls. *Id*. at 21:12-22:6.

10.     LiveVox calls based on the information provided by DCI. *Id*. at at 62:2-15; 87:3:14.

11.     The Rule 30(b)(6) designee testified "[w]e use a predictive dialer to make phone calls." *Id*. at 22:5-6.

12.     With LiveVox, DCI has the "ability to make millions of phone calls a day," an ability it "needs." *Id*. at 70:25-71:7.

---

[4] "Davis Tr." refers to the deposition transcript of the Plaintiff, portions of which are submitted as <u>Exhibit B</u> to the Lemberg Declaration.

13.     If DCI is making a million calls a day, those phone numbers are placed in files and uploaded to LiveVox by DCI. *Id*. at 73:25-74:5.

14.     "Uploading a campaign or file would be the numbers [DCI] want[s] to call." *Id*. at 81:4-5.

15.     With LiveVox, DCI has "the option to store information or phone numbers into the system, [the] LiveVox system, for up to 30 days." *Id*. at 80:11-13.  LiveVox "has the capacity to obtain - - retain them for up to 30 days." *Id*. at 80:24-25.

16.     LiveVox dials the numbers throughout the day. *Id*. at 62:11-15.

17.     If someone picks up a call, the call is then transferred to a DCI collector. *Id*. at 31:13-24; 57:7-11.

18.     LiveVox also has the capacity to dial sequentially. *Id*. at 89:17-24.

19.     In deciding whether to use the LiveVox system, DCI relied upon, among other things, a memo it received from LiveVox (the "LiveVox Memo"). (January 6, 2014, Pye Declaration).[5]

20.     The LiveVox Memo sets forth that LiveVox is "able to store or produce numbers to be called." (Exhibit C page 1).

21.     The LiveVox Memo sets forth that a court had ruled that "LiveVox's Application Service is indeed an ATDS that is subject to the TCPA." *Id*.

*Calls to Davis*

22.     DCI has produced a "list of every call that LiveVox made" to the 8596 number (the "Dial List"). *Id*. at 31:1-8 (deposition Exhibit 5).[6]

---

[5] The Pye Declaration and its Exhibit, submitted by DCI in the matter Echevvaria v. Diversified Consultants, Inc., No. 17, 13-cv-04980-LAK (S.D.N.Y.), is submitted as Exhibit C to the Lemberg Declaration.
[6] The Dial List is submitted as Exhibit D to the Lemberg Declaration.

23.     The Dial List shows sixty (60) calls to the 8596 number between August 1, 2012, and November 15, 2012. (Exhibit D).

24.     The Dial List shows five (5) inbound calls from the 8596 number. (Pye Tr. 35:12-18; Exhibit D August 9th, September 5th, and three on November 15th).

25.     Davis answered several calls from DCI. (Davis Tr. 22:12-21)

26.     He answered to tell DCI to stop calling him because DCI had the wrong person. *Id.*

27.     DCI ignored the requests to stop calling. *Id.* at 23:6-15.

28.     DCI's representatives were rude and called Plaintiff a "liar." *Id.* at 26:8-23.

### *DCI's Discovery Responses*

29.     Plaintiff's interrogatories number seven and twenty set forth:

> Identify the name, address, and contact information of any person, individual, entity and/or organization hired, employed or retained by You to make outgoing calls to Plaintiff and/or to Plaintiffs Number.
>
> ****
>
> Identify every contractor or subcontractor hired or retained by you to make outgoing calls to the Plaintiff.

(Int. No. 7 & 20).[7]

30.     DCI's response to both interrogatories was "None." *Id.*

## ARGUMENT

### I.  STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The Court must "view the facts in the light most favorable to the

---

[7] DCI's Interrogatory Responses are attached as Exhibit E to the Lemberg Declaration.

non-moving party, drawing all reasonable inferences in that party's favor." *Barbour v. Dynamics Research Corp.,* 63 F.3d 32, 36 (1st Cir. 1995). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Id.* (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)). The Court must disregard evidence proffered by a party bearing the burden of proof wherever a jury would be free to disbelieve such evidence. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 135 (2000).

## II. PLAINTIFF, NOT DCI, IS ENTITLED TO SUMMARY JUDGMENT ON THE TCPA CLAIM

### A. The TCPA

"Congress passed the TCPA to protect individual consumers from receiving intrusive and unwanted calls." *Gager,* 727 F.3d at 268 (*citing Mims v. Arrow Fin. Servs., LLC,* —U.S.—, 132 S. Ct. 740, 745, 181 L. Ed. 2d 881 (2012). TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), makes unlawful:

> any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

47 U.S.C. § 227(b)(1)(A)(iii).

To establish a TCPA violation, Plaintiff must show 1) he was called on his cellular telephone 2) by an automatic telephone dialing system.

The First Circuit has not yet addressed whether "prior express consent" is an affirmative defense. The matter is generally treated as an affirmative defense as the FCC has ruled that the calling entity "should be responsible for demonstrating that the consumer provided prior express consent." *Heinrichs v. Wells Fargo Bank, N.A.*, 2014 WL 985558, *2 (N.D. Cal., Mar. 7, 2014)

(citing *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, Request of A CA Int'l for Clarification and Declaratory Ruling,* 23 F.C.C.R. 559, 565 (Jan. 4, 2008)); *Echevvaria,* 2014 WL 929275 at *7; *Kolinek v. Walgreen Co.,* 2014 WL 518174, *2 (N.D. Ill., Feb. 10, 2014). Here, DCI asserts express consent as an affirmative defense in its answer.

### B.      Expert Testimony is Not Required

Expert testimony is not required to show that DCI used an ATDS and violated the TCPA. *See, e.g.*, Echevvaria v. Diversified Consultants, Inc., 2014 WL 929275, *6 (S.D.N.Y. Feb. 28, 2014) ("[t]he Livevox System is an Automatic Telephone Dialing System" where no expert testimony presented).  Where, as here, the undisputed facts show the capacities of the LiveVox system meet the TCPA definition of ATDS and that the system is a predictive dialer, expert testimony is not needed.

### C.      The "Called Party", Plaintiff, and Not the Intended Recipient, Possesses Standing under the TCPA

The TCPA prohibits the use of dialing equipment without prior express consent of the "called party." 47 U.S.C. § 227(b)(1)(A).  The TCPA does not refer to the "intended recipient" of calls.  There is good reason for this, as companies such as DCI, who purchase phone numbers from skip tracers, could dial away without fear of liability even when they did not obtain the number from the actual debtor or their creditor, DCI's client.  DCI's standing argument is based on two outlier cases which misread the statute and the argument has been roundly rejected. *Soppet v. Enhanced Recovery Co., LLC,* 679 F.3d 637, 640 (7th Cir.  2012) ("The phrase 'intended recipient' does not appear anywhere in § 227, so what justification could there be for equating 'called party' with 'intended recipient of the call'?"); *see also Osorio v. State Farm Bank, F.S.B.,* 2014 WL 1258023, *7-8 (11th Cir.  Mar. 28, 2014); *Echevvaria,* 2014 WL 929275

at *8 (DCI liable for calling called party, not the intended recipient); *D.G. v. Diversified Adjustment Serv., Inc.*, 2011 WL 5506078, *3 (N.D. Ill., Oct. 18, 2011) (rejecting *Cellco* and *Leyse* and the standing argument).

### D.   LiveVox is an ATDS

LiveVox is an ATDS. *Echevvaria*, 2014 WL 929275 at *5 ("[t]he LiveVox System is an Automatic Telephone Dialing System"). The TCPA defines "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § Section 227(a)(1).

First, the undisputed facts show that LiveVox has the capacity to store numbers:

- The LiveVox Memo sets forth that LiveVox is "able to store or produce numbers to be called." (Exhibit C page 1).

- If DCI is making a million calls a day, those phone numbers are placed in files and uploaded to LiveVox by DCI. (Pye Tr. 73:25-74:5).

- DCI has "the option to store information or phone numbers into the system, [the] LiveVox system, for up to 30 days." *Id*. at 80:11-13.

- LiveVox "has the capacity to obtain - - retain them for up to 30 days." *Id*. at 80:24-25.

Second, the undisputed facts show that LiveVox has the capacity to dial numbers sequentially:

Q   But the LiveVox system has the capacity to dial
    sequentially, does it not?

A   I guess, yeah.

Q   Is that yes?

A   Yes.

> Q   In fact, that's their default option, is it not?
>
> A   Correct.

(Pye Tr. 89:17-24).

Third, the undisputed facts also show that LiveVox dialed such numbers:

- LiveVox has the "ability to make millions of phone calls a day." *Id*. at 70:25-71:7.

- LiveVox dials the numbers throughout the day. *Id*. at 62:11-15.

- The timing of calls is "designated by the settings that [the Director of Data Services] has installed or set up that morning." *Id*. at 61:15-20.

- If someone picks up a call, the call is then transferred to a DCI collector. *Id*. at 31:13-24; 57:7-11.

- Every call DCI makes is made through the LiveVox system. *Id*. at 26:16.

Therefore, under the straightforward definition of an ATDS set forth in the TCPA, LiveVox is an ATDS because it has the capacity to store telephone numbers and dial them sequentially.

Furthermore, LiveVox is an ATDS because it is a predictive dialer which calls from lists of numbers. The FCC has interpreted an ATDS as "cover[ing] any equipment that has the specified capacity to generate numbers and dial them without human intervention, regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG Docket No. 02–278, Report and Order, 18 FCC Rcd. 14014, 14092 (2003) ("2003 TCPA Order") (emphasis added). A predictive dialer is considered an ATDS under the TCPA. *Id.* at 14093. "A predictive dialer is ... hardware, when paired with certain software, [which] has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers ... from a database of

numbers." *Id.* at 14091. The FCC states that "the basic function of such equipment ... [is] the capacity to dial numbers without human intervention." *In the Matter of Rules & Regulations Implementing the Te. Consumer Prot. Act of 1991,* 23 F.C.C.R. 559, 566 (2008). *See also*, *Jones v. FMA Alliance Ltd.*, 2013 WL 5719515, *1, n. 9 (D. Mass. Oct. 17, 2013) ("The FCC determined that 'equipment that dials a list of numbers (such as a business's list of customers), rather than dials random or sequential numbers, is still an ATDS, because 'the basic function of such dialing equipment' is the same—'the capacity to dial numbers without human intervention.' ") (citation omitted); *Echevvaria* 2014 WL 929275 at *4-5; *Sherman v. YahooA Inc.*, 2014 WL 369384, *5-6 (S.D. Cal., Feb. 3, 2014).

Here, the undisputed facts show that DCI loads lists of numbers into LiveVox to dial:

- DCI uploads files of numbers for the system to dial. (Pye Tr. 81:4-82:1).

The Rule 30(b)(6) designee further admitted:  "[w]e use a predictive dialer to make phone calls." *Id.* at 22:5-6; *see also Echevvaria*, 2014 WL 929275 at *5-6 (Jamie Sullivan, Diversified's Director of Data Services, "repeatedly admitted" that LiveVox "acts as a predictive dialer.").  In *Echevvaria*, DCI's Director of Data Services gave the following example:

> [S]ince it's a predictive dialer ... it has an algorithm that decides how many lines they need to increase it by or when they need to start making calling. So, if all your agents are on the phone or let's say there are a couple of them not ready and all of them are on the phone and there's no one available, then the lines dialed will go to zero, and there won't be any calls made when [LiveVox is] waiting for somebody to be available again.
>
> Then let's say one agent becomes available. And let's say [LiveVox is] dialing 50 lines per agent as an example. Then, if you're looking at the management software, it will show 50 lines start dialing to try and get a call to the available agent.

2014 WL 929275 at *6.[8]  Here, Ms. Pye admitted the same that LiveVox is a predictive dialer.

---

[8] Mr. Sullivan was unable to be deposed when Davis' counsel travelled to Florida for depositions in this case.  Ms. Mavis-Ann Pye, the Vice President of Compliance, advised, concerning her

Thus, LiveVox is a predictive dialer and it is an ATDS under the TCPA. DCI is liable for each call it placed to Davis' MetroPCS cellular telephone number. (Davis Tr. 15-16).

### E.   DCI Made the Calls to Davis

DCI argues that LiveVox, not DCI, placed the calls to Davis and, therefore, DCI is not liable for any TCPA violations. (Doc. No. 29 at 7-8). The argument is frivolous.  First, the argument directly contradicts DCI's sworn representations in discovery that no other entities, other than DCI, placed the calls.  Second, while DCI used LiveVox's systems to make the calls, it was DCI that actually initiated the dialing campaigns and is directly liable for the calls.  Third, even if LiveVox could be identified as a third-party independent operator, DCI is vicariously liable for its actions because LiveVox acted at the direction and under the control of DCI.

First, Plaintiff specifically addressed this issue in his interrogatory requests to discover whether or not some other entity had placed the calls to Plaintiff.  Plaintiff's interrogatories number seven and twenty set forth:

> Identify the name, address, and contact information of any person, individual, entity and/or organization hired, employed or retained by You to make outgoing calls to Plaintiff and/or to Plaintiffs Number.
>
> ****
>
> Identify every contractor or subcontractor hired or retained by you to make outgoing calls to the Plaintiff.

(Int. No. 7 & 20).[9]  DCI's response to both interrogatories was "None." DCI now asserts, in direct contradiction to the sworn interrogatory responses, that LiveVox made the disputed calls rather than DCI placing the calls using the LiveVox system.  DCI contrary argument now is frivolous, disingenuous and it should be estopped from making the "we didn't call" argument.

Second, DCI is directly liable for all the calls it placed through the LiveVox system.

---

company's technical director "I think he's on vacation right now.  I don't know if he's here today." (Pye Tr. 63:25-64:12).

[9] DCI's Interrogatory Responses are attached as <u>Exhibit E</u> to the Lemberg Declaration.

TCPA liability applies to the person who "make[s]" the call. 47 U.S.C. § 227(b)(1)(A)(iii). LiveVox is DCI's phone company not some independent operator.  DCI's Rule 30(b)(6) witness unequivocally testified that LiveVox is the "phone system that [DCI] use[s] to **make** the calls" (Pye Tr. 21:12-15 (emphasis added)) and every call DCI makes is made through the LiveVox system (*Id*. at 26:16).  When asked whether the calls are made "by" or "through" Livevox, the Rule 30(b)(6) designee clarified that the calls are made "through LiveVox." *Id*. at 57:4-6.

The situation here is not akin to when one marketing company sends spam text messages on behalf of another's product (*Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1083 (C.D. Cal. 2012) and *Freidman v. Massage Envy Franchising, LCC*, 2013 WL 3026641, *4 (S.D. Cal., June 13, 2013)) or a when a debt collector makes ATDS calls on behalf of its client hospital (*Mais v. Gulf Coast Collection Bureau, Inc.*, 944 F. Supp. 2d 1226, 1244 (S.D. Fla. 2013)).  Here, LiveVox is DCI's carrier and sole phone system used to place every one of DCI's calls.  LiveVox may provide dialing infrastructure, but DCI used that system without the consent of the called party and therefore violated the TCPA.  DCI cannot now turn around and blame its telephonic system provider for its unlawful conduct. *See Clark v. Avatar Technologies Phl, Inc.*, 2014 WL 309079, *2-3 (S.D. Tex., Jan. 28, 2014) (dismissing TCPA claim against telephonic technology provider whose systems were used by Avatar to make the calls and noting that Congress did not intend TCPA to apply to telecommunication carrier "unless they controlled the content of the call or message.").  DCI can no more pass the buck to LiveVox then it could to MetroPCS, Plaintiff's cellular carrier, which is also an entity that "called" the Plaintiff's physical phone.  DCI made the calls to Plaintiff and it is directly liable under the TCPA.

Third, even assuming, *arguendo*, that LiveVox, and not DCI, "made" the calls, DCI is vicarious liable for any TCPA violations.  While the TCPA is silent as to vicarious liability, the

Supreme Court has held that, when Congress creates a tort action, "it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules." *Meyer v. Holley,* 537 U.S. 280, 285, 123 S.Ct. 824, 154 L.Ed.2d 753 (2003). Courts have found a "[Defendant] can be held liable even if it did not" make the communication at issue "as long as Plaintiff plausibly alleges Defendant ultimately controlled sending the message." *In re Jiffy Lube Int., Inc. Text Spam Litigation,* 847 F. Supp. 2d 1253, 1258-59 (S.D. Cal. 2012). An employer of an independent contractor is liable for "harm caused where the employer retained some control over the manner in which the work was performed." *Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co.*, 439 Mass. 387, 407, 788 N.E.2d 522 (2003). To the extent DCI now wishes to blame its telecommunications provider for DCI's own conduct, LiveVox was at all times acting under DCI's control, with DCI's knowledge, to its benefit and at DCI's explicitly direction:

- LiveVox calls based on the information provided by DCI. (Pye. Tr. at 62:2-15; 87:3:14).

- DCI decides "which numbers are going to be dialed." *Id*. at 22:19-22.

- If DCI does not upload numbers to dial, no calls are placed. *Id*. at 87:21-23.

- DCI determines the countours of the specific dialing campaign. *Id*. at 61:16-20.

- The calls are placed "through LiveVox." *Id*. at 57:4-6.

- If someone picks up a call, the call is then transferred to a DCI collector – not to LiveVox. *Id*. at 31:13-24; 57:7-11.

Even were the Court to accept the proposition that DCI did not make the calls, the undisputed facts here show that LiveVox acted at the express direction and pursuant to the control of DCI. However, as set forth above, it was DCI and not LiveVox that "made" the calls.

Because the undisputed facts show that DCI called Plaintiff's cellular phone, with an ATDS and did so without Plaintiff's prior express consent, Plaintiff is entitled to summary judgment on his claims under the TCPA.

## III.    DCI IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS UNDER THE FDCPA

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e).  Because the FDCPA is "remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated." *Vincent v. The Money Store*, 736 F.3d 88, 98 (2d Cir.  2013)(citation omitted); *see also Lesher v. Law Offices Of Mitchell N. Kay, PC*, 650 F.3d 993, 997 (3d Cir.  2011); *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir.  2002); *Hamilton v. United Healthcare of La.*, 310 F.3d 385, 392 (5th Cir.  2002).  The FDCPA imposes "strict liability on debt collectors for their violations" and "[a] plaintiff need not show intentional conduct by the collector or actual damages." *Harrington v. CACV of Colorado, LLC*, 508 F. Supp. 2d 128, 132 (D. Mass. 2007) (internal citations omitted).

Section 1692d prohibits any conduct the "natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d.  Violations of § 1692d involve tactics which "embarrass, upset, or frighten a debtor." *Harvey v. Great Seneca Financial Corporation*, 453 F.3d 324, 330 (6th Cir.  2006).  Ordinarily, "whether conduct harasses, oppresses, or abuses will be a question for the jury." *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179 (11th Cir.  1985); *Smith v. ProCollect, Inc.*, 2011 WL 1375667, *5 (E.D. Tex., Apr. 12, 2011); *Neill v. Bullseye Collection Agency, Inc.*, 2009 WL 1386155, *2 (D. Minn., May 14, 2009).

Section 1692f provides that a debt collector "may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.  Similarly, whether conduct

amounts to unfair or unconscionable means to collect a debt is similarly best decided by a jury. *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1201 (11th Cir.  2010) (whether conduct "constitutes an 'unfair or unconscionable means to . . . attempt to collect a debt' for purposes of § 1692f presents a jury question.").

Here, Davis is not the debtor.  He does not owe DCI or its client a dime.  DCI paid a third party skip tracer for Davis' cellular phone number and proceeded to call him, unlawfully, using ATDS technology.  DCI's own dial list shows sixty (60) calls between August 1, 2012, and November 15, 2012. (Exhibit D).  Davis testified that he repeatedly told DCI to stop calling him and that he was not the person it was looking for:

> At this point, I probably answered . . . I started to answer them more often, because I wanted it to stop. I just thought if I get a different person, I'd get a different result.
>
> And to that point, they started getting rude about the situation. You know, and I'm just trying to get them to stop calling me, because I wasn't the person that they were looking for.

(Davis Tr. 22:12-21).   DCI ignored the requests and the calls continued:

> It was the same deal. I just told her, I'm not the person that you're looking for. And she said different one . . once again, another lady, But she pretty much had the same thing to say, Okay, we'll take you off the list; I'm very sorry; do you know her? I said, No. And it pretty much worked out the same way. But this time the calls only stopped for maybe four days, and then they fired up again.

(*Id*. at 23:6-15),  and continued:

> After the last probably the sixth time I talked to a person, I got a guy, and the guy was very rude.
>
> He told me that he had talked to me last week and I said that I was her brother or I don't know what he said. But he called me a liar. And it really ticked me off at that point in time.
>
> And I told him, Look, I don't I told you for the last time; I'm not this person; stop calling me.

> And then when I got the next call, you know and I just told them said, If you're not going to take me off the list, I'm going to do something about it, plain and simple.

*Id*. at 26:8-23.

Under the FDCPA, intent to harass can be inferred where the "debt collector continued to call after being asked not to call." *Pratt v. CMRE Fin. Servs., Inc.*, 2012 WL 86957, *3 (E.D. Mo., Jan. 11, 2012); *Hendricks v. CBE Grp., Inc.*, 891 F. Supp. 2d 892, 896 (N.D. Ill. 2012). Because the undisputed facts show that Plaintiff repeatedly told DCI to stop calling and that it had the wrong person and that DCI persisted in calling him after being told to stop, summary judgment for either party is inappropriate on Plaintiff's section 1692d and f claims which are best left for the jury to decide.

## IV.   DCI IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S INVASION OF PRIVACY CLAIM

Harassing conduct by a debt collector may give rise to a claim of invasion of privacy. *Krasnor v. Spaulding Law Office*, 675 F. Supp. 2d 208, 213 (D. Mass. 2009).  (collecting cases). "Unreasonable intrusion upon the plaintiff's seclusion" is one "type[ ] of conduct that may give rise to a claim of invasion of privacy").  *Ayash v. Dana–Farber Cancer Inst.,* 443 Mass. 367, 822 N.E.2d 667, 681 n. 16 (2005).  Intrusive conduct demonstrating a patter on of harassment may be actionable under the common law.  *Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 409 Mass. 514, 567 N.E.2d 912, 915 (1991).

As set forth above, DCI purchased Plaintiff's phone number from a skip tracer and placed it into his dialing equipment.  DCI ignored Plaintiff's requests that DCI cease calling and, when confronted, called Plaintiff a "liar." Plaintiff did not ask to be called by DCI and DCI had no right to call him using dialing equipment or call him a liar.  Plaintiff respectfully submits that

whether DCI's conduct amounted to an invasion of Plaintiff's privacy is a question best left for the jury to decide.

## CONCLUSION

For the foregoing, Plaintiff respectfully requests the Court deny DCI's motion for summary judgment in its entirety.

Dated: April 28, 2014

Respectfully submitted,

By   */s/ Sergei Lemberg*
Sergei Lemberg (BBO# 650671)
LEMBERG LAW, LLC
1100 Summer Street, 3rd Floor
Stamford, CT 06905
Telephone: (203) 653-2250
Facsimile:  (203) 653-3424
Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 28, 2014, I electronically filed the foregoing through the CM/ECF system which sent notice of such filing to the following:

John J. O'Connor
PEABODY & ARNOLD LLP
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210
*Attorney for Defendant*

*/s/ Sergei Lemberg*
Sergei Lemberg