**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

Jamie Davis,                                          :
                                                      :
                              Plaintiff,              :   Civil Action No.: 1:13-cv-10875-FDS
                v.                                    :
                                                      :
                                                      :
Diversified Consultants, Inc.; and                    :
DOES 1-10, inclusive,                                 :
                                                      :
                              Defendants.             :

**MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION FOR SUMMARY**
**JUDGMENT BY DEFENDANT DIVERSIFIED CONSULTANTS, INC.**

## I.   INTRODUCTION

Jamie Davis ("Davis"), by and through undersigned counsel, submits this Reply
Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment. The
undisputed facts show that Defendant Diversified Consultants, Inc. ("DCI") violated the
Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227, by placing calls to Plaintiff's
cellular telephone with an Automatic Dialing System ("ATDS") without Plaintiff's consent.

## II.   THE FACTS

As an initial matter, Plaintiff has moved to strike the Affidavit of Rafal Leszczynski upon
which DCI relies to dispute Plaintiff's facts 22 and 24-31. (Doc. No. 39). As more fully set forth
in the motion to strike, fact discovery ended on March 19, 2014 (Doc. No. 20), and Mr.
Leszczynski was not disclosed as a witness. To the extent the DCI "disputes" Plaintiff's facts
based on the Leszczynski affidavit, those facts should be deemed admitted.

### a.   The Undisputed Facts

All facts not disputed are deemed admitted. "A party opposing the motion [for summary
judgment] shall include a concise statement of the material facts of record as to which it is

contended that there exists a genuine issue to be tried, with page references to affidavits,

depositions and other documentation . . . Material facts of record set forth in the statement

required to be served by the moving party will be deemed for purposes of the motion to be

admitted by opposing parties unless controverted by the statement required to be served by

opposing parties." L.R. 56.1; *Foley v. Yacht Mgmt. Grp., Inc.*, 2011 WL 4020835, *3 (D. Mass.,

Sept. 9, 2011).

DCI does not dispute Plaintiff's facts 1-6, 8-21, 23 in any respect.  Thus, the following

factual narrative is undisputed:

> DCI is a debt collector.  On July 9, 2012, DCI acquired, and called Davis
> concerning, an account belonging to a "Rosalee Pagan." Davis is not Rosalee
> Pagan, he does not know Rosalee Pagan and had never heard of Rosalee Pagan.

> On July 15, 2012, DCI conducted a skip trace with a company called Innovis
> whom DCI pays to acquire and provide location information and telephone
> numbers. Innovis provided DCI the telephone number (857) XXX-8596 (the
> "8596 number").  The 8596 number is Davis' MetroPCS cellular telephone
> number.

> Every call DCI makes is made through the LiveVox system. LiveVox is separate
> company that provides an off-site predictive dialer DCI uses to make all DCI
> phone calls.  The Rule 30(b)(6) designee testified "we use a predictive dialer to
> make phone calls." With LiveVox, DCI has the ability to make millions of phone
> calls a day, an ability it needs.  If DCI is making a million calls a day, those phone
> numbers are placed in files and uploaded to LiveVox by DCI.  Uploading a
> campaign or file would be the numbers DCI wants to call.

> With LiveVox, DCI has the option to store information or phone numbers into the
> system, the LiveVox system, for up to 30 days. LiveVox has the capacity to
> obtain - - retain them for up to 30 days. LiveVox dials the numbers throughout the
> day. If someone picks up a call, the call is then transferred to a DCI collector.

> LiveVox also has the capacity to dial sequentially.

> In deciding whether to use the LiveVox system, DCI relied upon, among other
> things, a memo it received from LiveVox (the "LiveVox Memo"). The LiveVox
> Memo sets forth that "LiveVox is able to store or produce numbers to be called."
> The LiveVox Memo sets forth that a court had ruled that "LiveVox's Application
> Service is indeed an ATDS that is subject to the TCPA."

DCI has produced a list of every call that LiveVox made to the 8596 number (the "Dial List"). The Dial List shows five (5) inbound calls from the 8596 number.

(Plaintiff's Statement of Facts 1-6, 8-21, 23).

### b.  Facts Not Sufficiently Disputed

In addition, while DCI "disputes" Plaintiff's fact number 22, which sets forth the number of calls DCI placed (60), DCI merely disputes the characterization of an "automatic dialing system" ("ATDS") and does not controvert the actual number of calls.  Plaintiff's fact 22 should therefore be deemed admitted as to the number of calls.

Plaintiff's fact number 7 sets forth that on August 1, 2012, DCI loaded the 8596 number into the LiveVox system and proceeded to call.  As proof, Plaintiff cites the deposition testimony of Ms. Pye.  Defendant refutes with a new affidavit which contradicts her prior deposition testimony.  As set forth below, the Court should reject those contradictory portions of the Pye Affidavit and fact number 7 should be deemed admitted.

## ARGUMENT

### I.  The Affidavit of  Mavis Ann-Pye violates the "Sham Affidavit Rule"

The Pye Affidavit contradicts Ms. Pye's prior deposition testimony and, therefore, should not be considered.  The First Circuit in *Colantuoni v. Alfred Calcagni & Sons, Inc.,* 44 F.3d 1 (1st Cir.  1994), articulated the "sham affidavit rule." *Mahan v. Boston Water & Sewer Comm'n,* 179 F.R.D. 49, 53 (D. Mass. 1998).  The rule provides that:

> When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed.

*Colantuoni,* 44 F.3d at 4-5.  "The purpose of this sham affidavit rule is to protect the procedural integrity of summary judgment." *Mahan,* 179 F.R.D. at 53; *see also OneBeacon Am. Ins. Co. v.*

*Commercial Union Assur. Co. of Canada*, 804 F. Supp. 2d 77, 85 (D. Mass. 2011) *aff'd,* 684

F.3d 237 (1st Cir.  2012).

Here, the affidavit of Mavis-Ann Pye is riddled with factual assertions which contradict

her prior sworn deposition testimony.  The undisputed facts show that DCI made the calls to

Plaintiff through the LiveVox system.  At summary judgment, DCI wishes to flip the script and

blame LiveVox for DCI's conduct.  Thus, at paragraph 4 of her affidavit, Ms. Pye states:

> "All calls to the Plaintiff's number were made by LiveVox inadvertently,
> unintentionally, and without any intent to harass or annoy the Plaintiff."

(Doc. No. 35 ¶ 4).  However, contrary to her sworn affidavit, at deposition Ms. Pye

testified that it was DCI making the calls through LiveVox:

> Q. On August 1st, 2012, that phone number was loaded -- was -- was first called using
>     the LiveVox system, correct?
>
> A. Every call is made through LiveVox.
>
> Q. So the answer is yes, right?
>
> A. Yes.

(Pye Tr. 26:13-18).

> Q. What is that -- what is the system that is being used to make the call?
>
> A. We still use LiveVox for every call we make: manual, inbound, outbound, quick
>     connect, RPC.
>
> Q. So these QC calls that you are talking about are still used -- used through the LiveVox
>     system that you folks use, correct?
>
> A. Yes.
>
> Q. That's how they're made, through the LiveVox, right?
>
> A. Every call that's placed or received at Diversified Consultants for a collector to a
>     consumer is used through LiveVox.

(*Id*. at 51:4-16).   The deposition testimony was clear – DCI "made" these calls "through"

LiveVox.  Further, Plaintiff's telephone was not called by accident and there is no evidence that DCI's practice of obtaining and calling Plaintiff's cellular phone through the LiveVox system was inadvertent or unintentional.

Strikingly, Ms. Pye also states "DCI never provided LiveVox telephone numbers . . ." (Doc. No. 35 ¶ 4).  However, at deposition she testified "[w]e decide which numbers are going to be dialed, and they are uploaded to LiveVox." (Pye Tr. at 22:19-20).  The affidavits representation that DCI never provided LiveVox telephone numbers directly contradicts prior testimony.

Most of Ms. Pye's affidavit is devoid of actual facts and instead makes several conclusory statements.  For instance, it states that no calls were made using an "automatic telephone dialing system." (Doc. No. 35 ¶ 4).  No facts are offered, just the conclusion.  That conclusion contradicts the undisputed facts admitted above and Ms. Pye's prior testimony that the system meets the definition of an ATDS because it has (1) the capacity to store numbers (Pye Tr. 73:25-74:5; 80:11-13, 24-25), (2) has the capacity to dial sequentially (*Id*. 89:17-24), and (3) it dials the numbers (*Id*. at 62:11-15).  Ms. Pye also admitted, repeatedly, that their dialer was a predictive dialer. (*Id*. at 21-22).  The statement that the dialer is not an ATDS is, respectfully, a meaningless assertion, not a fact, and contradicts the witness's prior testimony.

Further, Ms. Pye's affidavit at paragraph 6 states that the interrogatories and the answer were compiled in "good faith." (Doc. No. 35 ¶ 6).  Again, this is offered without any actual factual support and Ms. Pye does not refute the factual proofs of Plaintiff's facts 24-31 which show that the express consent defense and sworn interrogatory answers were made without *any* factual support.

No explanation is offered for Ms. Pye's shift from her prior deposition testimony nor is an attempt made to reconcile the contradictions. Therefore, the Court should decline to consider the Pye affidavit sufficient to raise an issue of fact as to whether (1) DCI made 60 calls (¶2); (2) whether DCI uses an ATDS (¶¶ 2, 3), (3) whether DCI "made" the calls and whether it provided numbers to LiveVox (¶4).

## II.   THE UNDISPUTED FACTS SHOW DCI VIOLATED THE TCPA

To establish a TCPA violation, Plaintiff must show 1) he was called on his cellular telephone 2) by an automatic telephone dialing system.

First, DCI does not dispute that it called Plaintiff on his cellular phone.

Second, the undisputed facts show DCI used an ATDS. The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § Section 227(a)(1); *Levy v. Receivables Performance Mgmt., LLC*, 2013 WL 5310166, *5 (E.D.N.Y., Sept. 23, 2013) (*citing Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 951 (9th Cir. 2009) (the "equipment need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it). The undisputed facts in part II.a *supra* show that LiveVox has the capacity to store numbers and dial sequentially.

Further, the undisputed facts show the LiveVox system is a predictive dialer which dials numbers off of databases and lists which also qualifies as an ATDS under the TCPA. *See Echevvaria v. Diversified Consultants, Inc.*, 2014 WL 929275, *4 (S.D.N.Y., Feb. 28, 2014) (*citing In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order,* 18 F.C.C. Rcd. 14014, 14017 ¶¶ 1–2, 2003 WL 21517853 (F.C.C. July 3, 2003)).

Finally, Defendant does not contest that it did not have Plaintiff's prior express consent to call his cellular phone.

## III.   THE UNDISPUTED FACTS SHOW TREBLE DAMAGES ARE WARRANTED

The undisputed facts show that DCI intentionally used LiveVox and used it to call the Plaintiff's cellular number.  DCI cannot credibly argue that its use of sophisticated dialing technology was somehow in error – it knowingly acted in a manner which may constitute a violation of the law.  Indeed, the LiveVox memo specifically warned DCI that its system had been held to be an ATDS.  Further, the undisputed facts show that DCI obtained Plaintiff's number from Innovis (not the creditor, not the plaintiff, and not the intended recipient of the calls) and DCI admits that it never had any evidence of prior express consent.  Therefore, under no theory, could DCI have had consent of the called party to dial their number.

 "[T]o establish a *knowing* violation of the TCPA for an award of treble damages, a plaintiff must prove only that the defendant knew that it acted or failed to act in a manner that violated the statute, not that the defendant knew that the conduct itself constituted a violation of the law." *Stewart v. Regent Asset Mgmt. Solutions*, 2011 WL 1766018, *7 (N.D. Ga., May 4, 2011).  DCI could not have been bothered to care whether it had consent to call the 8596 number with LiveVox which DCI knew was an ATDS and predictive dialer.  That is knowing and willful disregard of consent and warrants treble damages.

## **CONCLUSION**

For the foregoing, Plaintiff respectfully requests the Court grant his motion for partial summary judgment on his claim under the Telephone Consumer Protection Act and enter a judgment against DCI for $90,000 and for costs.

Dated: May 5, 2014

Respectfully submitted,

By   */s/ Sergei Lemberg*
Sergei Lemberg (BBO# 650671)
LEMBERG LAW, LLC
1100 Summer Street, 3rd Floor
Stamford, CT 06905
Telephone: (203) 653-2250
Facsimile:  (203) 653-3424
Attorneys for Plaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 5, 2014, I electronically filed the foregoing through the CM/ECF system which sent notice of such filing to the following:

John J. O'Connor
PEABODY & ARNOLD LLP
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210
*Attorney for Defendant*

/s/ Sergei Lemberg
Sergei Lemberg