UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
**JAMIE DAVIS,**                    )
                                    )
      **Plaintiff,**         )
                                    )      Civil No.
      v.                     )      13-10875-FDS
                                    )
**DIVERSIFIED CONSULTANTS, INC., and** )
**DOES 1-10, INCLUSIVE,**           )
                                    )
      **Defendants.**        )
_____ )

## MEMORANDUM AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

**SAYLOR, J.**

This is an action claiming unlawful debt collection. It arises out of a series of telephone calls between plaintiff Jamie Davis and various employees of defendant Diversified Consultants, Inc., a debt collection agency. Davis contends that, by the mode and manner in which they called him, DCI and its employees violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*; the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; and the Massachusetts Privacy Act, Mass. Gen. Laws ch. 214, § 1B.

Davis has moved for partial summary judgment as to the TCPA claim, and DCI has cross-moved for summary judgment on all counts. Davis also has moved to strike an affidavit submitted by DCI in support of its motion. For the reasons set forth below, defendant's motion to strike will be denied, defendant's motion for summary judgment will be denied, and plaintiff's motion for summary judgment will be granted in part and denied in part.

**I.    Background**

Unless otherwise noted, the following facts are undisputed.

A.      The Telephone Calls

On July 9, 2012, DCI acquired an account (that is, an alleged debt) belonging to Rosalee Pagan. It first attempted to collect on Pagan's debt on July 11, 2012. On July 15, 2012, DCI paid a "skip trace" service provider, a company called Innovis, for location information and telephone numbers related to Pagan.[1] Among the data Innovis provided was the telephone number (857) XXX-8596. That number, however, was assigned to Jamie Davis's MetroPCS cellular telephone.[2]

From August 1 to November 15, 2012, Davis received a total of 60 telephone calls at the '8596 number from DCI collectors. Davis answered five to seven of those calls, and DCI may have left one voice-mail message. When DCI collectors asked about Pagan, Davis stated that he was not Pagan, did not know her, and had never heard of her, and asked the collectors to stop contacting him. At no point in time did he consent to being called. (Pye Dep. at 27-28). Davis alleges that one of the collectors was rude to him and implied that Davis was lying about not knowing Pagan. (Davis Dep. at 20-24, 28-31).

B.      The LiveVox System

During the relevant time period, DCI utilized a telephone system operated by LiveVox in order to place many, if not all, of its telephone calls. Both Mavis-Ann Pye, who was the DCI Vice President of Compliance, and the DCI website refer to the LiveVox system as a "predictive

---

[1] The phrase "skip trace" apparently derives from the slang expression that a fugitive or debtor has "skipped town."

[2] Rafal Leszczynski, the DCI Director of Operations and Dialing Systems, contends that DCI only calls numbers received from its clients, thereby suggesting that it does not use an outside skip trace service provider. (Leszczynski Aff. ¶ 7). However, because that statement, made in an affidavit at the summary judgment stage, directly contradicts the deposition testimony of DCI's Rule 30(b)(6) witness, and because Leszczynski was not employed in his current position at DCI during the events at issue, the statement cannot be credited in order to defeat summary judgment. *See Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4-5 (1st Cir. 1994).

dialer." (Pye Dep. at 20-21; Lemberg Decl., Ex. F, DCI Website).[3]

Every morning, DCI Director Jamie Sullivan uploaded a file containing telephone numbers into the LiveVox cloud-based server.[4] The LiveVox system then called those numbers throughout the day. If someone answered the call, the system routed that call to a DCI debt collector. The parties dispute whether DCI or LiveVox actually placed the telephone calls.

DCI had the option to store telephone numbers in the LiveVox system for up to 30 days. (Pye Dep. at 80). However, the numbers instead were erased at 1:00 a.m. every night, and DCI uploaded new numbers every morning. (Leszczynski Aff. ¶ 7). Pye stated that DCI had the option for LiveVox to dial numbers sequentially; DCI did not, however, use that function. (Pye Dep. at 89).[5] According to a memorandum written by LiveVox concerning the Telephone Consumer Protection Act, "the LiveVox Application Service, while able to store or produce telephone numbers to be called, does not have the capacity to store or produce numbers to be called *using a random or sequential number generator*." (Pl. Mem., Ex. C) (emphasis in original). LiveVox therefore concluded that its system does not constitute an "automatic telephone dialing system" under the TCPA, but noted in the memorandum that one court has disagreed with that conclusion. (*Id.*).

Davis contends that DCI used the LiveVox system to call him from August to November 2012. Pye confirmed at her deposition that the LiveVox system called the '8596 number (*see*

---

[3] The Leszczynski affidavit described LiveVox as using a Voice-Over-Internet Protocol ("VOIP"). (Leszczynski Aff. ¶ 3). Defendant has not explained why the fact that the LiveVox uses VOIP makes a difference to the analysis of this case.

[4] Sullivan has since left the employ of DCI and Leszczynski has taken over his duties. (*See* Def. Opp. Mot. to Strike).

[5] The Leszczynski affidavit contends that LiveVox does not have the capacity to produce or store telephone numbers using a random or sequential number generator. (Leszczynski Aff. ¶ 5).

Pye Dep. at 28-35). She nonetheless now states in an affidavit opposing summary judgment that no calls were made using "an automatic telephone dialing system." (Pye Aff. ¶ 2).[6] Pye also states that DCI's standard practice is to "scrub" new accounts for cellular telephone numbers in order avoid calling such numbers. (*Id.* ¶ 5).[7]

### C. Procedural Background

On April 12, 2013, Davis filed a complaint against DCI and the DCI collectors who called him, all identified as "John Doe" defendants. The complaint alleged claims under the TCPA, and the FDCPA and for state-law invasion of privacy.

On March 31, 2014, Davis moved for partial summary judgment as to the TCPA claim, and DCI cross-moved for summary judgment as to all claims. On April 28, 2014, Davis filed a motion to strike an affidavit submitted by DCI in support of its motion and opposition.

## II. Motion to Strike

Plaintiff has moved under Fed. R. Civ. P. 37 to strike the affidavit of Rafal Leszczynski, which defendant offered in support of its motion for summary judgment and in opposition to plaintiff's motion for summary judgment.

Fed. R. Civ. P. 37 provides a remedy for an opposing party's failure to comply with certain disclosure requirements or discovery requests. As relevant here, the failure to identify a witness as required by Fed. R. Civ. P. 26(a) prevents the party from using that witness to supply evidence on a motion, "unless the failure was substantially justified or is harmless." Fed. R. Civ.

---

[6] For the same reasons that the Leszczynski affidavit will be disregarded under the "sham affidavit" rule, the newly submitted Pye affidavit will be disregarded to the extent that it directly contradicts her prior deposition testimony. *See Colantuoni*, 44 F.3d at 4-5.

[7] The TCPA treats cellular telephones and land-line telephones differently. *See generally* 47 U.S.C. § 227.

P. 37(c)(1).

Plaintiff contends that defendant failed to make a timely disclosure of Leszczynski as a potential witness. Defendant, however, asserts that Leszczynski is a new employee, hired to replace Jamie Sullivan (a disclosed DCI witness) after he resigned; the affidavit, defendant argues, is therefore proper. Defendant's explanation satisfies the "substantially justified" or "harmless" standard. Defendant could not, initially, have disclosed Leszczynski as a witness if he was not yet an employee, and it did disclose his predecessor in office. Defendant perhaps should have supplemented its disclosures and informed plaintiff of the change in a more prompt fashion. But that error appears harmless at this stage. Ultimately, if Leszczynski is now the appropriate witness who can provide testimony in place of Sullivan, then defendant may present such testimony. The motion will not be granted on that basis.

Plaintiff also objects that Leszczynski's testimony contradicts that of another DCI 30(b)(6) witness, Mavis-Ann Pye. To be sure, a party cannot submit an affidavit contradicting testimony from its own witnesses in order to avoid summary judgment. "When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed." *Colantuoni*, 44 F.3d at 4-5. Accordingly, under this so-called "sham affidavit" rule, the Court will not rely upon statements by Leszczynski that directly contradict those of defendant's other 30(b)(6) witnesses. But that is not ground to strike the affidavit as a whole.

Accordingly, the motion to strike will be denied, except to the extent that the affidavit

5

contradicts the sworn deposition testimony of defendants' witnesses.[8]

### III.     Cross-Motions for Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Essentially, Rule 56[] mandates the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Coll v. PB Diagnostic Sys.*, 50 F.3d 1115, 1121 (1st Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In making that determination, the court views "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009). When "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256-57.

"Cross motions for summary judgment neither alter the basic Rule 56 standard, nor warrant the grant of summary judgment *per se*. Cross motions simply require us to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed. As always, we resolve all factual disputes and any competing, rational inferences in the light most favorable to the party against whom summary judgment has entered." *Wightman v.*

---

[8] Defendant also opposed the motion under Local Rule 7.1(a)(2) on the ground that plaintiff had failed to confer prior to filing of the motion and to submit a certification of compliance. Because the motion is subject to denial on another ground, there is no need to reach the issue.

*Springfield Terminal Ry.*, 100 F.3d 228, 230 (1st Cir. 1996) (internal citations omitted).

## A. Telephone Consumer Protection Act

"Congress passed the TCPA to protect individual consumers from receiving intrusive and unwanted calls." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 268 (3d Cir. 2013) (citing *Mims v. Arrow Fin. Servs., LLC*, 132 S.Ct. 740, 745 (2012)). The TCPA, in relevant part, makes it unlawful for any person "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A). "The TCPA is essentially a strict liability statute" and "does not require any intent for liability except when awarding treble damages." *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011).

### 1. Standing

Defendant has raised a threshold issue as to whether plaintiff has standing to complain of a TCPA violation. The answer is surely yes. Defendant's argument is that plaintiff was not the "intended recipient" of the calls. The term "intended recipient," however, appears nowhere in § 227. Instead, the statute refers to "any person or entity" or the "called party," which plaintiff undoubtedly is and was. *See Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 643 (7th Cir. 2012) (concluding that "called party" means "the person subscribing to the called number at the time the call is made" and rejecting argument that it means "intended recipient"); *Harris v. World Fin. Network Nat. Bank*, 867 F. Supp. 2d 888, 894-95 (E.D. Mich. 2012); *Swope v. Credit Mgmt., LP*, 2013 WL 607830, at *2-3 (E.D. Mo. Feb. 19, 2013). At a minimum, while defendant may not have intended to call plaintiff the first time, after plaintiff made clear it that he was not

Rosalee Pagan and defendant continued to call him, at that point he became the "intended recipient." The two cases that defendant cites in support of its position are factually distinguishable. Although both decisions stated that only the "intended recipient" had standing, the plaintiffs there were cellular telephone companies suing on behalf of subscribers, *see Cellco P'ship v. Dealers Warranty, LLC*, 2010 WL 3946713, at \*6-13 (D.N.J. Oct. 5, 2010), and an individual who shared a telephone line with his roommate, *see Leyse v. Bank of Am., Nat. Ass'n*, 2010 WL 2382400, at \*4-6 (S.D.N.Y. June 14, 2010). None of those plaintiffs were the subscribers and regular users of the telephone, as plaintiff here is. Accordingly, plaintiff has standing to sue.

### 2. **Merits of the Claim**

There are two factual issues under the TCPA that are relevant here: whether a person called another on a cellular telephone, and whether that call utilized an automatic telephone dialing system.[9]

The first issue is relatively straightforward. It is undisputed that plaintiff received calls on his cellular telephone. Defendant argues that LiveVox, not it, actually made the complained-of calls. It emphasizes that LiveVox is an "independent, third-party contractor" and that "the LiveVox system, not DCI's collection agents, places the calls." (Def. Mem. at 7). But that argument ignores several critical facts. Every morning, a DCI employee uploaded telephone numbers into the LiveVox system. Essentially, that instructed LiveVox which numbers to call to

---

[9] Some cases may also require determination of whether the called party consented to being called. There is no evidence here that plaintiff consented, defendant has admitted that it obtained plaintiff's number from a skip trace service provider, and defendant seemingly no longer raises prior consent as an affirmative defense. *See Levy v. Receivables Perf. Mgmt. LLC*, 972 F.Supp.2d 409, 418 (E.D.N.Y. 2013) ("'Prior express consent' to be contacted on a cell phone via an ATDS in regards to a particular debt has been deemed granted in situations where a plaintiff provided his or her cell phone number to a creditor during the transaction that resulted in that particular debt.").

8

the same extent as if a DCI collector himself had typed in the number on a telephone keypad. Then, when a person answered a call, the call was routed to, and the person was greeted by, a DCI employee. Here, defendant obtained plaintiff's cellular telephone number, uploaded the number into the LiveVox system on multiple days, and on the five to seven occasions when plaintiff answered the call, one of defendants' employees answered. Defendant cannot deny responsibility merely because it used a technological intermediary.[10] Even viewing the evidence in a light favorable to defendant, it is clear that defendant "made" the calls to plaintiff's cellular telephone within the meaning of the TCPA.

The second issue, however, poses a slightly more difficult question. The statute defines "automatic telephone dialing system" ("ATDS") as "equipment which has the *capacity*—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a) (emphasis added). To satisfy that definition, the equipment does not actually have to store or produce telephone numbers or to use a random or sequential number generator; it merely must have the capacity to do so. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009).[11]

The FCC has ruled that a predictive dialer qualifies as an ATDS. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014,

---

[10] Moreover, in response to plaintiff's interrogatories to "[i]dentify the . . . contact information of any person, individual, entity and/or organization hired, employed or retained by You to make outgoing calls to Plaintiff and/or Plaintiffs Number" and to "[i]dentify every contractor or subcontractor hired or retained by you to make outgoing calls to the Plaintiff," defendant answered both as "None." (Pl. Opp., Ex. E).

[11] Defendant contends, as a preliminary issue, that plaintiff's claim must fail because expert testimony is needed to determine whether LiveVox is an ATDS. Some plaintiffs have indeed employed an expert for this purpose, *see, e.g.*, *Dominguez v. Yahoo!, Inc.*, 2014 WL 1096051 (E.D. Pa. Mar. 20, 2014), but others have proved their claims without the use of an expert, *see, e.g.*, *Echevvaria v. Diversified Consultants, Inc.*, 2014 WL 929275 (S.D.N.Y. Feb. 28, 2014). Viewing the evidence presented here as a whole, it does not appear that expert testimony is necessary to determine the question.

9

14091-93 (July 3, 2003). The agency found that predictive dialer hardware, "when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Id.* at 14091. It noted that "the evolution of the teleservices industry has progressed to the point where using lists of numbers is far more cost effective" but that "[t]he basic function of such equipment . . . has not changed—the capacity to dial numbers without human intervention." *Id.* at 14092. "In 2008, the FCC issued a Declaratory Ruling reaffirming that 'a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers.'" *Echevvaria v. Diversified Consultants, Inc.*, 2014 WL 929275, at *5 (S.D.N.Y. Feb. 28, 2014) (quoting *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, 23 F.C.C. Rcd. 559, 556 ¶ 12, 2008 WL 65485 (F.C.C. Jan.4, 2008)). *See Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (holding that a predictive dialer is an ATDS under the TCPA); *Vance v. Bureau of Collection Recovery LLC*, 2011 WL 881550 (N.D. Ill. Mar. 11, 2011).

The undisputed evidence here clearly establishes that the LiveVox system has the *capacity* to store telephone numbers. Pye stated that the system could store numbers for up to 30 days, and the LiveVox memorandum confirms that it is "able to store or produce telephone numbers to be called." (Pl. Mem., Ex. 3). Defendant appears to argue that the system fails to meet the statutory definition because it deletes all numbers at the end of the day. (*See* Def. Mem. at 7). But it is undisputed that the system stores numbers for at least the course of a single day. The TCPA, on its face, does not require storage for any length of time. In any event, the system here has the capacity to do so.

Whether the LiveVox system has the capacity for random or sequential number generation is a somewhat murkier question. According to Pye's deposition testimony, the answer is yes. She confirmed that LiveVox has the capacity to dial sequentially and that sequential dialing is its default option. (Pye Dep. at 89). Furthermore, another district court, examining the same LiveVox system as utilized by DCI, came to the conclusion that it met the statutory definition of an ATDS. *See Echevvaria v. Diversified Consultants, Inc.*, 2014 WL 929275, at *5-7. Defendant's contrary evidence consists of (1) a statement in Leszczynski's affidavit that contradicts Pye's deposition testimony and (2) a memorandum issued by LiveVox to its clients that states that its system does not use a random or sequential number generator, but that also notes that a court had found it met the definition of an ATDS. (Leszczynski Aff. ¶ 5; Pl. Mem., Ex. C).

Ultimately, defendant's evidence is insufficient to raise a dispute of material fact sufficient to prevent summary judgment. Defendant cannot rely on the Leszczynski affidavit to defeat summary judgment on this issue because it directly contradicts the prior statements of defendant's prior Rule 30(b)(6) witness. *Colantuoni*, 44 F.3d at 4-5. And even if the LiveVox memorandum correctly states that its system cannot dial randomly or sequentially, it is undisputed that LiveVox is a "predictive dialer" that dials from lists of numbers. The FCC rulings specifically account for the fact that technology has developed such that lists of numbers are more cost-effective than random or sequential numbers. The agency concluded that a "predictive dialer" that relies on lists of numbers qualifies as an ATDS under the TCPA. That ruling is entitled to deference. *See Leyse v. Clear Channel Broadcasting, Inc.*, 2013 WL 5926700, at *8 (6th Cir. Nov. 5, 2013) (granting *Chevron* deference to FCC regulations under

the TCPA); *cf. United States v. Mead Corp.*, 533 U.S. 218, 226-27, 229-30 (2001). Here, Pye testified that the LiveVox system was a predictive dialer. The LiveVox memorandum and defendant's own website likewise stated that the LiveVox system was a predictive dialer. In short, the LiveVox system, as utilized by defendant, was an ATDS.

In sum, even viewing the facts in the light most favorable to defendant, the evidence demonstrates that defendant used an ATDS to call plaintiff, without his prior consent. Accordingly, plaintiff is entitled to summary judgment that defendant violated § 227 of the TCPA.

The TCPA provides for damages in an amount totaling the greater of actual monetary loss or $500 for each violation of the statute. 47 U.S.C. § 227(b)(3)(B). However, a plaintiff may recover treble damages if a defendant willfully or knowingly violated the statute or regulations promulgated under § 227(b). *Id.* § 227(b)(3). While neither the TCPA nor FCC regulations provide a definition for willful and knowing, most courts have interpreted the willful or knowing standard to require only that a party's actions were intentional, not that it was aware that it was violating the statute. *See, e.g.*, *Alea London Ltd.*, 638 F.3d at 776 (holding that the TCPA requires mere "knowing" conduct); *Harris v. World Fin. Network Nat. Bank*, 867 F. Supp. 2d 888, 896-97 (E.D. Mich. 2012); *Sengenberger v. Credit Control Servs., Inc.*, 2010 WL 1791270 (N.D. Ill. May 5, 2010); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 WL 1154206 (N.D. Ill. Mar. 19, 2013). *But see, e.g.*, *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001) (requiring knowledge that conduct violated the statute). Those courts relied, in part, on the fact that "the Communications Act of 1943, of which the TCPA is a part, defines willful as 'the conscious or deliberate commission or omission of such act, irrespective of any intent to

violate any provision[ ], rule or regulation.'" *Sengenberger*, 2010 WL 1791270, at *6 (quoting 47 U.S.C. § 312(f)). And "[t]he plain language of 47 U.S.C. § 227(b) makes the sender of an unauthorized [communication] strictly liable, so interpreting 'willfully' as requiring a volitional act does not render the treble damages provision redundant with simple [liability] under the TCPA." *Bridgeview Health Care Ctr.*, 2013 WL 1154206, at *7. The Court finds that reasoning persuasive and will therefore apply that standard here.

The undisputed evidence demonstrates that defendant called plaintiff 60 times. (Pl. Mem., Ex. 4). Plaintiff therefore is entitled to at least $500 per call. The only remaining question is whether he is entitled to treble damages.

There is substantial evidence to suggest that defendant may have acted willfully in calling plaintiff. Defendant did not acquire plaintiff's telephone number from its client, as a number associated with the debtor, but instead from a third-party service provider. Even assuming that the subscriber of that number was the debtor, it was not the number she had provided to defendant's client; defendant therefore could not reasonably have believed that it had her consent to call that number. *Cf. Echevvaria*, 2014 WL 929275, at *9 (finding that the first call was not a knowing and willful violation because the defendant could not have known that the number did not belong to the debtor). In any event, the subscriber was plaintiff, not the debtor. Even after plaintiff informed defendant that he was not the debtor and did not know the debtor, defendant continued to call him. Moreover, the LiveVox memorandum clearly stated that one court had ruled that its system was an ATDS subject to the TCPA, therefore putting defendant on notice of potential illegality.

On the other hand, defendant has asserted that it acted in good faith. It contends that it relied on LiveVox's statement that its system was not an ATDS, and that it took steps to scrub

13

cellular telephone numbers from its system so as not to violate the TCPA.

Intent is an issue of fact that is rarely decided at the summary judgment stage. *Petitti v. New England Tel. & Tel. Co.*, 909 F.2d 28, 31 (1st Cir. 1990) (stating that issues of intent "are most suited for jury determinations"). The evidence presented here is not so clear and one-sided as to the alleged willfulness of defendant's conduct that reasonable jurors could come to only one conclusion. Accordingly, neither plaintiff nor defendant is entitled to summary judgment as to treble damages for willful conduct.

B.      **Fair Debt Collection Practices Act**

Plaintiff contends that defendant violated the FDCPA by calling him, a non-debtor, 60 times over the course of three and one-half months, by continuing to call him even after he had requested that defendant cease, and by acting rudely on at least one telephone call. Defendant, in turns, argues that the complained-of actions do not amount to a violation of the Act.

Congress passed the FDCPA in part "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692. The Act imposes various prohibitions on the actions of debt collectors. Under § 1692d, they "may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," which includes "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5). Under § 1692f, debt collectors "may not use unfair or unconscionable means to collect or attempt to collect any debt." Pursuant to that subsection, courts have "sanction[ed] improper conduct that the FDCPA fails to address specifically." *Adams v. Law Offices of Stuckert & Yates*, 926 F.Supp. 521, 528 (E.D. Pa.1996).

Under § 1692d, there are no bright-line rules as to what constitutes harassment or what

14

demonstrates intent to annoy. Instead, such findings have been based on a consideration of multiple factors. For example, in determining whether the intent requirement is met, courts often look to the volume, frequency, and persistence of calls, to whether defendant continued to call after plaintiff requested it cease, and to whether plaintiff actually owed the alleged debt. *See Hendricks v. CBE Grp., Inc.*, 891 F. Supp. 2d 892, 896-97 (N.D. Ill. 2012); *see, e.g.*, *Sussman v. I.C. Sys., Inc.,* 928 F. Supp. 2d 784, 793-94 (S.D.N.Y. 2013); *Tarrant v. Northland Grp., Inc.*, 2012 WL 140431, at *5-6 (M.D. Tenn. Jan. 18, 2012); *Chavious v. CBE Grp., Inc.*, 2012 WL 113509, at *1-3 (E.D.N.Y. Jan. 13, 2012); *Pratt v. CMRE Fin. Servs., Inc.*, 2012 WL 86957, at *3-4 (E.D. Mo. Jan. 11, 2012). On the other hand, a single rude caller or the mere fact that a telephone call is unwelcome is insufficient. *See Martin v. Select Portfolio Serving Holding Corp.*, 2008 WL 618788, at *6-7 (S.D. Ohio Mar. 3, 2008).

Here, viewing the evidence in the light most favorable to plaintiff, there is an issue of material fact as to whether defendant's conduct amounts to a violation of the FDCPA. Sixty calls over a period of about three months is not insignificant in volume, and on multiple days, defendant called plaintiff as many as three or four times. And the debt did not belong to plaintiff; defendant persisted in calling plaintiff after he had informed it of that fact and requested defendant stop calling. A reasonable jury could find a violation of § 1692d(5) on those facts.

As to plaintiff's claim under § 1692f, the section generally applies where the conduct is similar to that prohibited by the FDCPA but not covered by any other section therein. *See Rush v. Portfolio Recovery Associates LLC*, 977 F. Supp. 2d 414, 432 (D.N.J. 2013); *Tarrant*, 2012 WL 140431, at *7-8. Plaintiff here does not appear to allege any conduct beyond the allegedly abusive calls, which fall within the ambit of § 1692d. However, because the FDCPA claims are

pleaded in a single count of the complaint, and because the § 1692d claim will survive summary judgment, the prudent course at this stage appears to be to deny summary judgment as to the § 1692f claim as well.

Accordingly, defendant's motion for summary judgment as to the FDCPA claim will be denied.

### C. Massachusetts Privacy Act

The Massachusetts Privacy Act establishes "a right against unreasonable, substantial or serious interference with . . . privacy." Mass. Gen. Laws ch. 214, § 1B. Although phrased with the disjunctive "or," a violation must be based on an interference that is both unreasonable and either substantial or serious. *Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 409 Mass. 514, 518-522 (1991). Plaintiff contends that defendant unreasonably intruded upon his privacy by obtaining his telephone number from a skip-tracer, repeatedly calling him, ignoring his requests to cease calling, and accusing him of being a "liar."

There are no cases precisely on point as to whether such conduct constitutes a violation of § 1B. However, Massachusetts courts have acknowledged that a claim of unreasonable intrusion upon one's seclusion may be actionable under the statute. *See Ayash v. Dana-Farber Cancer Inst.*, 443 Mass. 367, 408 n.16 (2005); *Ellis v. Safety Ins. Co.*, 41 Mass. App. Ct. 630, 638 (1996) (Lenk, J.); *see also Krasnor v. Spaulding Law Office*, 675 F. Supp. 2d 208, 213-14 (D. Mass. 2009) (collecting cases). Viewing the facts in the light most favorable to the plaintiff, a reasonable jury could find defendant's conduct here both unreasonable and substantial or serious. Accordingly, defendant's motion for summary judgment will be denied.

## IV. Conclusion

For the foregoing reasons, plaintiff's motion to strike is DENIED, defendant's motion for

16

summary judgment is DENIED, and plaintiff's motion for summary judgment is DENIED as to treble damages on count 2 and otherwise GRANTED.

**So ordered.**

                                                  /s/ F. Dennis Saylor
                                                  F. Dennis Saylor IV
                                                  United States District Judge

Dated: June 27, 2014